**Ronald Lee WOLFE, Appellant,**

v.

**Elbert V. NASH, Warden, Missouri State Penitentiary, Appellee.**

**No. 17109.**

United States Court of Appeals Eighth Circuit.

Jan. 31, 1963.

James B. Herd and James J. Sauter, St. Louis, Mo., for appellant.

George Draper, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal in forma pauperis from an order of the United States District Court dated June 15, 1962,[1] denying and dismissing the petition of Ronald Lee Wolfe for a writ of habeas corpus. Wolfe v. Nash, 205 F.Supp. 219. Wolfe is a prisoner of the State of Missouri, and an inmate of the State Penitentiary in Jefferson City, Missouri. He was tried and convicted in the Circuit Court of Pike County, Missouri, on February 29, 1960, by a jury, of statutory rape of an eight-year-old child on October 18, 1959, in Lincoln County, Missouri, and was sentenced to death.[2] At his trial, Wolfe, an indigent, was represented by court-appointed counsel. They secured for him a change of venue from Lincoln County to the adjoining County of Pike, on the ground that he could not have a fair trial in Troy, the county seat of Lincoln County, where his alleged victim lived, because of adverse publicity and local hostility toward him.

From his conviction and sentence, Wolfe appealed to the Supreme Court of Missouri. Counsel who had represented him at his trial represented him on his appeal. The case was heard by the State Supreme Court sitting en banc. That Court on January 9, 1961, filed its opinion affirming Wolfe's conviction and ordering the execution of his sentence. State of Missouri v. Wolfe, Mo., 343 S.W. 2d 10. A motion for rehearing was denied February 13, 1961. 343 S.W.2d 10. Certiorari was denied by the United States Supreme Court, 366 U.S. 953, 81 S.Ct. 1912, 6 L.Ed.2d 1246. Execution of Wolfe's sentence has been stayed by the State Supreme Court pending the outcome of Wolfe's habeas corpus proceedings.

Apparently, since the affirmance of Wolfe's conviction by the Supreme Court of Missouri, all further proceedings attacking the validity of his conviction and sentence have been conducted by his present counsel, who have represented him before the United States District Court and represent him here.

Wolfe has unquestionably exhausted all of his State remedies. The Supreme Court of the United States, in denying the petition of Wolfe for certiorari to the Missouri Supreme Court with respect to its refusal to grant his second petition for habeas corpus, did so "without prejudice to the petitioner's habeas corpus proceeding now pending [the instant proceeding] in the United States District Court for the Western District of Missouri." Wolfe v. Missouri, 368 U.S. 907, 82 S.Ct. 188, 7 L.Ed.2d 101.

Judge Duncan, the United States District Judge who heard and decided this case, had before him (1) a transcript of the evidence and proceedings in the Circuit Court of Pike County at the trial of Wolfe on February 29, 1961; (2) a supplemental transcript covering the voir dire proceedings in the selection of the trial jury; (3) a copy of the papers relating to the change of venue of the trial from Lincoln County to Pike County, Missouri; and (4) copies of newspaper publications concerning the alleged offense of Wolfe, his apprehension, his escape from the Lincoln County Jail in Troy, his recapture, and related happenings prior to his trial; and the exhibits offered to show the extent of the radio and television news broadcasts regarding these same events.

What Wolfe did which brought about his trial, his conviction and his sentence has been adequately and fairly stated by the Supreme Court of Missouri in its

---

1. The order was originally entered April 26, 1962, and was subsequently vacated and re-entered June 15, 1962.

2. Appellant was charged, by information, with rape under the provisions of § 559.-260 V.A.M.S. and, for the purpose of enhancing punishment under the Missouri Habitual Criminal Act, § 556.280 V.A.M. S., as re-enacted in 1959, and § 556.290 V.A.M.S., ten prior felony convictions were alleged.

opinion in State of Missouri v. Wolfe, supra, pages 11–12 of 343 S.W.2d, and restated by Judge Duncan in his opinion in 205 F.Supp. 219. We shall try to avoid needless repetition.

That the eight-year-old girl named in the information filed against Wolfe had been raped was established by the uncontradicted medical evidence. There was no eyewitness to the commission of the crime, but the circumstantial evidence was such as to leave no substantial doubt that Wolfe was the perpetrator. When he was captured in Hannibal, Missouri, in the early hours of the day following that on which the crime was committed, there was blood on his trousers and on his shorts, and blood on the seat of the stolen car which he had been driving when he picked up the child in Troy, and which he drove after leaving her and while trying to make his escape. He later accompanied officers to the place where the alleged offense was committed, and there identified a bloody shirt he had given the child to wipe herself with and had left by the roadside.

It is argued that the trial of Wolfe in the Circuit Court of Pike County, Missouri, was so unfair as to be violative of the due process clause of the Fourteenth Amendment of the Constitution of the United States, for the following reasons: (1) the voir dire examination of the venire of prospective jurors from which the trial jurors to try Wolfe were to be selected was inadequate to insulate him from the hostility engendered by much adverse publicity; (2) the conviction was obtained by the State through the use of an involuntary confession; (3) the State on the trial of Wolfe overaccentuated his criminal record; and (4) he was denied the effective assistance of counsel. It is also argued that the order appealed from should be reversed because of erroneous rulings made by Judge Duncan in the hearing conducted by him (1) in refusing to compel the attendance of State court jurors who tried Wolfe; (2) in excluding evidence of a witness relative to the state of mind of the people of the community

where and when the trial took place; and (3) in denying a continuance until a witness who refused to testify at the hearing on the ground of self-incrimination, would change his mind and testify.

The case of the State of Missouri against Wolfe, as it was presented to the Circuit Court of Pike County and on appeal to the Supreme Court of Missouri, differs in substantial respects from the case as portrayed by Wolfe's present counsel in the hearing before Judge Duncan and on this appeal. Whatever doubts we may entertain as to the authority of a federal court to review, on habeas corpus, questions not raised or preserved for review in criminal trials in state courts, we shall resolve in favor of Wolfe for the purposes of this appeal. Cf. United States ex rel. Noia v. Fay, 2 Cir., 300 F.2d 345, 352.

The question of the alleged inadequacy of the voir dire examination of prospective jurors at the trial of Wolfe was raised in his direct appeal from his conviction, and was considered and overruled by the Supreme Court of Missouri in State of Missouri v. Wolfe, supra, pages 13–14 of 343 S.W.2d. Judge Duncan in his decision expressed his views as to the adequacy of the examination of the prospective jurors. Wolfe v. Nash, supra, pages 225–226 of 205 F.Supp.

The Supreme Court of Missouri was undoubtedly justified upon the record of Wolfe's trial in concluding that, under Missouri law, there was no inadequacy in the voir dire examination of jurors and no error committed by the trial court in connection with the selection of the jury. Cf. State v. Nichols (Mo.), 165 S.W.2d 674. There is nothing to indicate that Wolfe had exhausted his peremptory challenges or that any unqualified or hostile juror was on the jury which convicted Wolfe.

Before Judge Duncan and before this Court it was argued that the questioning of the jurors making up the panel from which the trial jury was selected, was too general to protect the rights of Wolfe to a fair trial in view of adverse publicity which it is claimed had created

great local hostility toward him and had permeated Pike County as well as Lincoln County, which adjoined it. It is contended, in substance, that members of the panel of prospective jurors must have had advance knowledge of the case, since many asked to be excused because of having formed opinions, and others indicated prejudices; that the court must have been aware of the sentiment against Wolfe at the time of the voir dire examination; that the courtroom was jammed and contained many spectators who had no business in the county seat on the day of the trial; and that the spectators were described by a member of the venire panel as "like a bunch of hungry lions trying to get their piece of meat."

Counsel for Wolfe say:

"With this background and under these circumstances, an exhausting and searching voir dire examination was indispensable to the protection of the appellant's right to a fair and impartial trial. Notwithstanding the need for such an examination, the record shows that the examination conducted by Court and counsel was patently inadequate."

The right to an impartially selected jury, assured by the Fourteenth Amendment, does not entitle one accused of crime to a jury he considers best adapted to his peculiar needs; "[i]t requires only that the jury be indiscriminately drawn from among those eligible in the community for jury service, untrammelled by any arbitrary and systematic exclusions." Hoyt v. Florida, 368 U.S. 57, 59, 82 S.Ct. 159, 7 L.Ed.2d 118. See also, Fay v. New York, 332 U.S. 261, 284–285, 67 S.Ct. 1613, 91 L. Ed. 2043.

The Fourteenth Amendment does not prescribe the mechanics for the selection of trial juries in the courts of the states, nor does it require that prospective jurors in those courts be interrogated as to their qualifications individually. A fair and reasonable way of securing an impartial jury is all that due process requires. Brown v. New Jersey, 175 U.S. 172, 176, 20 S.Ct. 77, 44 L.Ed. 119; Hayes v. Missouri, 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578; Howard v. Kentucky, 200 U.S. 164, 173, 26 S.Ct. 189, 50 L.Ed. 421. The record of the voir dire examination of the panel of prospective jurors indicates to our minds that Judge Clemens, who presided at the trial of Wolfe, in questioning and supervising the questioning of prospective jurors as to their qualifications, did so with competence, fairness and impartiality.

If the minds of the jurors selected to try Wolfe were so infected by adverse publicity that they could not be fair and impartial, that reasonably cannot be deduced from the record of the State court trial. Wolfe was not tried with undue haste. He had the advice of counsel at all stages of the proceedings. The offense was committed near Troy, Missouri, on October 18, 1959, and the trial was held at Bowling Green, the County seat of Pike County, more than four months later. It seems improbable that public attention of residents of Pike County could have remained focussed on Wolfe and his alleged misdoings during that entire period. See and compare, United States ex rel. Darcy v. Handy, 351 U.S. 454, 457, 463–464, 76 S.Ct. 965, 100 L.Ed. 1331.

The duty and responsibility of seeing that Wolfe had the fair jury trial to which he was entitled under the Fourteenth Amendment was primarily that of the State trial judge. We find no basis in the record on appeal for ruling that he did not discharge that duty carefully, conscientiously, and with dignity and due regard for the constitutional rights of Wolfe.

There had, of course, been publicity unfavorable to Wolfe, much of it sensational and some of it false or greatly exaggerated. Homicides, rapes, assaults, jailbreaks and the like are grist to the mills of the news gatherers. The news coverage relating to the alleged misdoings of Wolfe was, as Judge Duncan pointed out, about what reasonably could be expected. It seems unlikely that at

the time of trial Wolfe was still much of a sensation after the more than four months that had elapsed since the date of his offending. Cf. Stroble v. California, 343 U.S. 181, 191–193, 72 S.Ct. 599, 96 L.Ed. 872.

It seems fair to assume that if the trial judge, or counsel for the defendant, knew or had reason to believe that an impartial jury could not be obtained to try Wolfe at the time and place set for the trial, he would not have been tried at that time.

We cannot say that the generality of the questions asked the prospective jurors as to their qualifications rendered Wolfe's "trial so unfair as to amount to a taking of" his "liberty without due process of law". Fay v. New York, 332 U.S. 261, 296, 67 S.Ct. 1613, 91 L.Ed. 2043.

The instant case is not comparable with Irvin v. Dowd, 366 U.S. 717, 81 S. Ct. 1639, 6 L.Ed.2d 751, where "[t]wo-thirds of the jurors had an opinion that petitioner was guilty and were familiar with the material facts and circumstances involved, including the fact that other murders were attributed to him, some [jurymen] going so far as to say that it would take evidence to overcome their belief." Page 728 of 366 U.S., page 1645 of 81 S.Ct.

In the Irvin case, the Supreme Court said (page 728 of 366 U.S., page 1645 of 81 S.Ct.):

"* * * With his life at stake, it is not requiring too much that petitioner be tried in an atmosphere undisturbed by so huge a waive of public passion and by a jury other than one in which two-thirds of the members admit, before hearing any testimony, to possessing a belief in his guilt. Stroble v. California, 343 U.S. 181 [72 S.Ct. 599, 96 L.Ed. 872]; Shepherd v. Florida, 341 U. S. 50 [71 S.Ct. 549, 95 L.Ed. 740] (concurring opinion); Moore v. Dempsey, 261 U.S. 86 [43 S.Ct. 265, 67 L.Ed. 543]."

In Marshall v. United States, 360 U.S. 310, 312, 79 S.Ct. 1171, 3 L.Ed.2d 1250

(reversing 10 Cir., 258 F.2d 94), the Court, in speaking of the trial of a criminal case, said:

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. Holt v. United States, 218 U.S. 245, 251 [31 S.Ct. 2, 54 L.Ed. 1021]. Generalizations beyond that statement are not profitable, because each case must turn on its special facts. * * *

"In the exercise of our supervisory power to formulate and apply proper standards for enforcement of the criminal law *in the federal courts* (Bruno v. United States, 308 U.S. 287 [60 S.Ct. 198, 84 L.Ed. 257]; McNabb v. United States, 318 U.S. 332 [63 S.Ct. 608, 87 L.Ed. 819]) we think a new trial should be granted." (Emphasis supplied.)

Mr. Justice Holmes in 1910 wrote the opinion for a unanimous court in Holt v. United States, supra, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, a murder case. One of the errors assigned was the failure of the trial court to sustain, in selecting the jury, a challenge for cause, which the appellant asserted had the prejudicial effect of reducing by one his peremptory challenges. The Court said (page 248 of 218 U.S., page 4 of 31 S. Ct.):

"* * * The finding of the trial court upon the strength of the juryman's opinions and his partiality or impartiality ought not to be set aside by a reviewing court unless the error is manifest, which it is far from being in this case. See Reynolds v. United States, 98 U.S. 145 [25 L.Ed. 244]; Hopt v. Utah, 120 U.S. 430 [7 S.Ct. 614, 30 L.Ed. 708]. Spies v. Illinois, 123 U.S. 131 [8 S.Ct. 22, 31 L.Ed. 80]."

Another error asserted in the Holt case was the court's refusal to exclude the trial jury from the courtroom while evidence was being taken as to circumstances under which the defendant was alleged to have made statements or confes-

sions. The Supreme Court said as to that (pages 249–250 of 218 U.S., page 4 of 31 S.Ct.) :

" * * * No doubt the more conservative course is to exclude the jury during the consideration of the admissibility of confessions, but there is force in the judge's view that if juries are fit to play the part assigned to them by our law they will be able to do what a judge has to do every time that he tries a case on the facts without them, and we cannot say that he was wrong in thinking that the men before him were competent for their task."

Another pertinent statement, found on page 251 of 218 U.S., on page 5 of 31 S. Ct. is:

" * * * If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day."

The "present day" to which the Justice referred was October 1910, a "day" long prior to radio and television with their wide dissemination of the news.

Whether a judge, in a case such as the instant one, may still act upon a belief that qualified jurors are persons of integrity "fit to play the part assigned to them by our law" and competent to perform their tasks in the administration of criminal justice in accordance with their oath, is debatable.

In his concurring opinion in Irvin v. Dowd, supra, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, Mr. Justice Frankfurter, in referring to state court convictions in cases where the jury was claimed to have been infected by inflammatory newspaper publicity, said (page 730 of 366 U.S., page 1646 of 81 S.Ct.) :

" * * * For one reason or another this Court does not undertake to review all such envenomed state prosecutions. But, again and again, such disregard of fundamental fairness is so flagrant that the Court is compelled, as it was only a week

ago, to reverse a conviction in which prejudicial newspaper intrusion has poisoned the outcome. Janko v. United States, ante [366 U.S.] p. 716 [81 S.Ct. 1662, 6 L.Ed.2d 846] ; see, e. g., Marshall v. United States, 360 U.S. 310 [79 S.Ct. 1171, 3 L.Ed. 2d 1250]. See also Stroble v. California, 343 U.S. 181, 198 [72 S.Ct. 599, 96 L.Ed. 872] (dissenting opinion) ; Shepherd v. Florida, 341 U. S. 50 [71 S.Ct. 549, 95 L.Ed. 740] (concurring opinion)."

Janko was a federal conviction. Apparently the reversal was based largely upon a confession of error by the Solicitor General. The Marshall case was also a federal case, reversed in the exercise of the supervisory jurisdiction of the Supreme Court over the federal courts. Shepherd v. Florida was reversed per curiam, with Mr. Justice Jackson and Mr. Justice Frankfurter filing a opinion concurring in the result. They expressed the view that "the trial was but a legal gesture to register a verdict already dictated by the press and the public opinion which it generated". (Page 51 of 341 U.S., page 549 of 71 S.Ct.) In the Stroble case, the majority agreed with the California Supreme Court that the petitioner had "failed to show that the newspaper accounts aroused against him such prejudice in the community as to 'necessarily prevent a fair trial,' Lisenba v. California, supra [314 U.S. 219], at 236 [62 S.Ct. 280, 86 L.Ed. 166]." (Page 193 of 343 U.S., page 605 of 72 S.Ct.).

Our conclusion on this phase of the case is that Wolfe has not demonstrated that the generality of the voir dire examination of jurors, considered in connection with the publicity adverse to him, constituted a denial by the State of Missouri of his constitutional right to a fair trial by the State.

In Fay v. New York, 332 U.S. 261, 287, 67 S.Ct. 1613, 91 L.Ed. 2043, the majority opinion points out that, while the Supreme Court has a supervisory power over federal judicial proceedings, there is a "duty of deference to the authori-

ty of the State over local administration of justice". See, also, United States ex rel. Darcy v. Handy, 3 Cir., 224 F.2d 504, 508, affirmed 351 U.S. 454, 76 S.Ct. 965, 100 L.Ed. 1331.

■ The contention that Wolfe's conviction was obtained through the use of a coerced confession cannot be sustained. There was no adequate basis on the evidence at the State court trial or before Judge Duncan for concluding that the statement Wolfe gave to the State officers on the morning of October 19, 1959, was coerced, involuntary or fabricated. The evidence was to the contrary. Wolfe took the stand at his trial. He said he had no recollection of anything that took place after two o'clock on October 18, and remembered nothing that happened on October 19, the day he purportedly gave his statement to the officers. Before Judge Duncan, the basis for the claim that Wolfe's statement was involuntary was that, because of his use of narcotics, he did not have the ability "to resist persuasion" and had not sufficient independence of will to make a voluntary statement. Wolfe's testimony that on the morning of October 19 he overheard State officers, in talking to each other, say that there was a mob in Troy and that "if I cooperated, which they thought I would, they would let met out on it," falls short of showing any intimidation or coercion. We think the statement made by Wolfe to State officers following his arrest and before he was produced before a magistrate was admissible in evidence. His evidence before Judge Duncan as to his claimed drug addiction and its effects, if it had been introduced at his trial, would not have made his statement inadmissible. See and compare: Stroble v. California, supra, 343 U.S. 181, 190–191, 72 S.Ct. 599, 96 L.Ed. 872; Brown v. Allen, 344 U.S. 443, 475–476, 73 S.Ct. 397, 97 L.Ed. 469; Hayes v. United States, 8 Cir., 296 F.2d 657, 668–670, certiorari denied 369 U.S. 867, 82 S.Ct. 1033, 8 L. Ed.2d 85; Feguer v. United States, 8 Cir., 302 F.2d 214, 252, certiorari denied

371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110.

■ The argument that, because certain evidence relating to the prior felony convictions of Wolfe alleged in the information was heard by the State trial judge in the presence of the jury during the State's case in chief, the trial became so unfair as to violate due process is unpersuasive. The theory is that, because the State Habitual Criminal Act provides (as it did not formerly) that evidence of prior convictions shall be heard by the State trial judge out of the hearing of the jury and because this State statutory command was not strictly complied with in the trial of Wolfe, the due process clause of the Fourteenth Amendment of the Federal Constitution entitles Wolfe to have the United States District Court set aside his conviction and require the Circuit Court of Pike County to retry him. How and in what way proof of prior convictions shall be made under the State Habitual Criminal statute and what effect a deviation from the requirements of the statute would have, we regard as purely a local legal problem and of no national concern whatever. The due process clause of the Fourteenth Amendment does not enable us to review errors of state law. Buchalter v. New York, 319 U.S. 427, 431, 63 S.Ct. 1129, 87 L. Ed. 1492.

The claim that Wolfe was denied the effective assistance of his court-appointed counsel has been adequately discussed and disposed of by Judge Duncan on pages 226–229 of his opinion in 205 F.Supp. See, in this connection, United States ex rel. Darcy v. Handy, 3 Cir., 203 F.2d 407, 425–428, and United States ex rel. Weber v. Ragen, 7 Cir., 176 F.2d 579, 585–587. The charge of incompetency of trial counsel is a charge easily made after conviction, and not always easy to disprove. It is unfortunate that reputable members of the bar who are appointed to represent indigent defendants and who do what can be done to protect and defend them, should, after

verdict, be charged with incompetence or worse. The truth is, of course, that to the criminal mind no trial is fair that does not result in an acquittal, no jury is impartial that does not return a verdict of not guilty, and no counsel is effective if the defendant is convicted, notwithstanding the evidence against him.

We find no adequate basis for the assertion that Wolfe was denied the effective assistance of counsel.

■ The refusal of Judge Duncan to compel the attendance before him of the jurors who had tried and convicted Wolfe was not error. They could not have been subjected to re-examination as to their qualifications to sit as jurors on Wolfe's case, or to interrogation as to any matter having to do with their service as jurors. See United States ex rel. Darcy v. Handy, 3 Cir., supra, 203 F.2d 407, 409, 419, 425.

■ It is argued that evidence tending to show the state of mind of residents of Bowling Green at the time of Wolfe's trial was erroneously excluded. At the hearing before Judge Duncan, counsel for Wolfe undertook to establish the mental attitude of the community at the time of the trial, by Mr. W. D. Middleton, who was then Mayor of Bowling Green. Mr. Middleton in testifying stated that there had been discussion of the case in Bowling Green prior to the trial of Wolfe. Asked whether "the talk was to the effect that this man was guilty," he answered: "I never heard it. Nobody said he was guilty." He was then asked, "What were the comments that you heard?" Counsel for the State objected to the question on the ground that it called for hearsay. The objection was sustained. Counsel for Wolfe made the following offer of proof:

> "I would like to make an offer of proof by this witness that on the date of the trial, which was February 29, 1960, there were present many persons whom this witness would testify discussed this case

outside and inside of the courtroom; that the feeling in the community of which he is the Mayor was that this person was guilty of the offense for which he was ultimately convicted and that the feeling and the atmosphere concerning the petitioner's guilt was based largely upon the press, television and radio reports which were circulated in the community concerning the petitioner."

The proffered evidence would, no doubt, have been largely hearsay, if not hearsay of hearsay, but might well have been received subject to the State's objection. See Builders Steel Co. v. Commissioner of Internal Revenue, 8 Cir., 179 F.2d 377, 379. There could, however, be no justification for remanding this case to Judge Duncan to afford counsel for Wolfe an opportunity to interrogate Mr. Middleton as to the state of mind of the populace of Bowling Green toward Wolfe at the time he was tried.

■ We perceive no color of merit whatever in the contention that Judge Duncan erred in denying Wolfe's motion for a continuance until such time as the testimony of William Buffington, who was called to testify on behalf of Wolfe but refused to do so, could be obtained. Buffington had been a jailmate of Wolfe in the Lincoln County Jail at Troy, from which both escaped a few days after Wolfe's arrest. It was apparently hoped that Buffington would testify in support of Wolfe's assertion that he was under the influence of drugs on October 19, 1959, the day he gave what he presently claims was an involuntary statement, and first met Buffington in the County Jail at Troy.

It is our conclusion, after a review of the entire record in this case, that there is no adequate evidentiary or legal basis for the reversal of the order of Judge Duncan denying and dismissing Wolfe's petition for a writ of habeas corpus. The order is affirmed.