Robert L. **BUTLER**, Petitioner-Appellant,

v.

John C. **BURKE**, Warden, Wisconsin
State Prison, Respondent-
Appellee.

No. 15310.

United States Court of Appeals
Seventh Circuit.

April 15, 1966.

Donald S. Eisenberg, and Douglas R. Zilz, Madison, Wis., for appellant.

Bronson C. La Follette, Atty. Gen., William A. Platz, Asst. Atty. Gen., John H. Bowers, Deputy Atty. Gen., Madison, Wis., for appellee.

Before HASTINGS, Chief Judge, and KILEY and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Robert L. Butler, petitioner, by this action sought a Writ of Habeas Corpus directed at respondent, John C. Burke, Warden, Wisconsin State Prison. Petitioner is in custody of respondent by virtue of a commitment to the State Depart-

ment of Public Welfare for treatment under provisions of Sec. 959.15(6) of the Wisconsin Statutes (known as the Wisconsin Sexual Deviates Act), following his conviction in the County Court of Walworth County, Wisconsin, on August 13, 1962, on a plea of guilty to an information charging a violation of Sec. 944.12 of the Wisconsin Statutes, "enticing a child for criminal purposes."

Prior to the instant proceedings, petitioner sought a Writ of Habeas Corpus in a State Court of Wisconsin, relying on the same grounds for relief as he does here. By order of the State Supreme Court, an evidentiary hearing was held before Honorable M. Eugene Baker, Circuit Judge, whose findings of fact were subsequently confirmed by the Supreme Court and the petition denied.

In the instant proceeding, the parties agreed that the case be submitted on the pleadings and transcripts of record made in the original State Court proceeding and in the evidentiary hearing before Judge Baker. In this posture and without further evidence, the matter was heard on oral argument and written briefs by Honorable Robert E. Tehan, United States District Judge, who rendered a well considered opinion, in conformity with which the petition was dismissed on July 12, 1965. From this order the appeal comes to this Court.

The contested issue was stated by Judge Tehan in his opinion, 250 F.Supp. 178:

"The sole issue raised by this petition is whether the petitioner's ignorance of the provisions of the Sex Deviate Law, and the failure of the court and any other person to apprise him of said provisions, compels a finding, as a matter of law, that petitioner did not voluntarily waive his right to counsel."

While this is the primary issue for decision here, petitioner broadens the issues with the contention that the Court's failure to advise him as to his right to counsel at his preliminary hearing as well as when his plea of guilty was entered was a violation of both the State and Federal Constitutions.

Petitioner does not contend that he failed to receive a full and fair hearing on the disputed factual issues in the State Court Habeas Corpus proceeding. We doubt if we are under any obligation to review the findings made at that time and approved by the Supreme Court, particularly in view of the stipulation that the record made there was to stand as the record in the District Court. Townsend v. Sain, 372 U.S. 293, 319, 83 S.Ct. 745, 9 L.Ed.2d 770. Even so, as a matter of precaution, we have read the testimony and conclude that it furnishes substantial support for the State Court's findings of fact.

Petitioner was arrested and taken into custody on Saturday evening, August 11, 1962, while under the influence of alcohol. On Sunday morning, August 12, at the office of Chief Deputy Sawyer, he was identified by the boy involved in the alleged crime and was interviewed by the officer. During this interview he was informed of the charge against him. A complaint and warrant charging a violation of Sec. 944.12 had already been issued by the District Attorney.

At that time petitioner made and signed a statement relating to the events upon which the criminal charge was based, and a copy was given to Sawyer. (No contention is made but that this statement was voluntary.) Before signing the statement, petitioner was advised that he was entitled to counsel, although he was told by Sawyer that it was doubtful if a lawyer could do very much to help him. He requested a bondsman but was informed there was no professional bondsman in the area and that bail would be fixed by the Judge on his appearance in court. Petitioner during the interview expressed his concern and fear of the publicity which a court trial would engender because of its effect on his job, his friends and his family, and stated that he wanted to get the matter over as quickly as possible. In this conversation, Sawyer informed petitioner that it would take less time and involve less publicity if he waived an attorney and pleaded guilty to the charge, but that he (Sawyer) could

not guarantee anything with respect to the outcome of his court hearing.

On Sunday evening, when petitioner was in jail, a Deputy Sheriff read him the provisions of the statute which he was charged with violating, which was an old statute and incorrectly stated the penalty as a fine of not more than $500 or not more than five years in prison, or both.

On August 13, petitioner was taken before Judge Erwin C. Zastrow, sitting as a Magistrate for a preliminary hearing which petitioner stated he understood and desired to waive. He was bound over to the County Court and immediately arraigned before the same Judge. Both prior to his preliminary hearing and again at the time of his arraignment, he was correctly informed by the District Attorney that the violation with which he was charged was a serious offense and carried a possible maximum penalty of ten years' imprisonment. At the time of his arraignment, the charge was read to him in open court, and he was advised by the Court of his right to be represented by counsel of his own choice and that if he was without funds, an attorney would be appointed for him. In response to the Court, he stated that he understood the charge, that he was not indigent and that he preferred to proceed without an attorney.

The District Attorney offered and the Court received three exhibits: (1) a statement made and signed by petitioner on Sunday afternoon during his interview with Sawyer, (2) a written statement by a witness to the alleged crime, and (3) interviews of Sawyer with the boy involved in the incident from which the charge stemmed. Petitioner entered a plea of guilty. No threats or promises were made to him. The trial Court did not specifically point out to petitioner that an attorney might be helpful in discovering possible defenses or mitigating circumstances of which a layman might not be aware.

Shortly prior to petitioner's appearance before the Court on August 13, he had appeared before the same Judge on a charge of disorderly conduct which involved an act by petitioner in relation to an adult male, similar in part to that involved in the instant matter. In that case petitioner changed a plea of not guilty to guilty for the stated reason that a trial would interfere too much with his employment.

At the time of his appearance in court on August 13, petitioner knew the nature of the charge brought against him and that taking indecent liberties with a small boy were illegal, but he did not believe it was a particularly violent act. Based on his plea of guilty, the nature of the charge and the exhibits introduced, the Court found that petitioner was "probably directly motivated by a desire for sexual excitement in the commission of the crime," and requested that the Department of Public Welfare accept him for treatment and observation, under the provisions of Sec. 959.15(2), after which the Department certified that it would accept him. On the following day, the Court committed petitioner to the Department for such presentence investigation.

On October 15, 1962, the Court, consistent with the Department's recommendation, found petitioner to be sexually deviated and in need of treatment for his mental abnormalities, and committed him to the Department of Public Welfare for treatment, pursuant to Sec. 959.15 (6).

The Circuit Court in the State Habeas Corpus proceeding found that petitioner was 34 years of age at the time of his arrest; that he had been employed by the International Business Machines Corporation in Chicago for slightly less than three years before his conviction; that his intelligent quotient was 115; that he had a B.A. degree from Beloit College, from which he graduated with a "B" average, and attended the Graduate School of Business Administration at Northwestern University during the years 1957 to 1959, but did not receive a degree, and that at no time did petitioner take any course in law or study courtroom procedure. The Court concluded:

"That petitioner deliberately and knowingly waived his right of counsel and entered a plea of guilty; that his

conduct in this regard was motivated by his desire to avoid the publicity which a trial would likely engender coupled with his erroneous assumption that his acts, though wrong and illegal, were not so violent as to either require or induce a Court to impose any extended confinement upon him."

The State Supreme Court, after a review of the transcript of testimony and the exhibits, concluded that the findings were "amply supported by the evidence," "that petitioner voluntarily waived his right to counsel," and denied his petition for Habeas Corpus.

■ Petitioner first contends that the State Court in the original case failed to inform him adequately as to his right to counsel as required by Sec. 7, Article I, of the Wisconsin Constitution, and cites a number of State Court decisions. Assuming there may be confusion, even conflict, in these decisions, as petitioner argues, we see no point in citing or discussing them for the reason that the highest Court of the State has decided that petitioner was sufficiently advised and that his plea of guilty was voluntary, with a full understanding of the nature of the charge. This is the law of the case insofar as it relates to State law, not subject to review by a Federal Court. Buchalter v. People of State of New York, 319 U.S. 427, 429, 63 S.Ct. 1129, 87 L.Ed. 1492; Patterson v. State of Colorado, 205 U.S. 454, 459, 27 S.Ct. 556, 51 L.Ed. 879; Rawlins v. State of Georgia, 201 U.S. 638, 639, 26 S.Ct. 560, 50 L.Ed. 899; Wolfe v. Nash, 313 F.2d 393, 400 (CA–8), and Bizup v. Tinsley, 316 F.2d 284, 286 (CA–10). In *Buchalter,* the Court, referring to the 14th Amendment of the Federal Constitution, stated (319 U.S. page 429, 63 S.Ct. page 1130):

"But the Amendment does not draw to itself the provisions of state constitutions or state laws. It leaves the states free to enforce their criminal laws under such statutory provisions and common law doctrines as they deem appropriate; and does not permit a party to bring to the test of a decision in this court every ruling made in the course of a trial in a state court."

In *Wolfe,* the Court, citing *Buchalter,* stated (313 F.2d page 400):

"The due process clause of the Fourteenth Amendment does not enable us to review errors of state law."

In *Bizup,* the Court stated (316 F.2d page 286):

"The Supreme Court in Patterson v. [State of] Colorado, 205 U.S. 454, 461, 27 S.Ct. 556, 557 [51 L.Ed. 879], held that a decision contrary to previous decisions 'is not an infraction of the 14th Amendment merely because it is wrong or because earlier decisions are reversed.' "

Petitioner primarily contends that his constitutional right to counsel guaranteed by the 6th Amendment, as embodied in the Due Process Clause of the 14th, was violated. Relying upon Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, and White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193, he argues that such right attached to the preliminary hearing which petitioner waived. Neither of these cases is of any aid to petitioner's contention on the facts here. In *Hamilton,* the defendant, without counsel, entered a plea of not guilty at an arraignment. The Court reversed his later conviction, holding that the defendant was entitled to counsel as under Alabama law arraignment is a "critical stage in a criminal proceeding." Unlike the instant case, this was so, as the Court pointed out, because it was the only stage in the proceeding at which certain defenses could be invoked. In *White,* the accused, without counsel at a preliminary hearing, entered a plea of guilty. This plea was introduced by the State against him at a subsequent trial. Under these circumstances, the Court held that the preliminary hearing was a "critical stage of the proceeding."

■ It is at once apparent that these decisions are not controlling here where the accused waived a preliminary hearing without entering any plea. This distinc-

tion is abundantly supported by decisions of both the State and Federal Courts subsequent to *Hamilton* and *White*. For Federal cases, see United States ex rel. Cooper v. Reincke, 333 F.2d 608 (CA–2); DeToro v. Pepersack, 332 F.2d 341 (CA–4), and Latham v. Crouse, 320 F.2d 120 (CA–10). *DeToro* is of particular significance not only because of the similarity of facts with those here and the Court's well reasoned opinion, with which we agree, but also because the prosecution had its origin in a Federal Court of the same State, as did the prosecution in White v. State of Maryland, supra.

Among the numerous State Court decisions called to our attention is Commonwealth ex rel. Maisenhelder v. Rundle, 414 Pa. 11, 198 A.2d 565, where the State Supreme Court held that the failure to appoint counsel at a preliminary hearing did not violate defendant's constitutional rights. In that case the defendant entered a plea of guilty at the preliminary hearing, when not represented by counsel, and on arraignment entered the same plea, when represented by counsel. We single out this State Court decision for the reason that the defendant there sought Habeas Corpus in a Federal Court on the ground that he was denied the assistance of counsel at the preliminary hearing. The Court reviewed the recent Supreme Court decisions, held that the preliminary hearing was not a "critical" stage of the proceeding and dismissed the petition. United States ex rel. Maisenhelder v. Rundle, D.C., 229 F.Supp. 506.

The Supreme Court of Wisconsin, in State ex rel. Offerdahl v. State, 17 Wis.2d 334, 336, 116 N.W.2d 809, 810, held:

"There is no constitutional right to be provided with counsel at a preliminary hearing arising under the United States constitution. Odell v. Burke (C.A. 7th Cir. 1960), 281 F.2d 782, certiorari denied, 364 U.S. 875, 81 S. Ct. 119, 5 L.Ed.2d 96. Neither does such a right exist under sec. 7, art. I, Wis.Const., because a preliminary hearing is not a criminal prosecution within the meaning of this constitutional provision."

This brings us to the issue as to whether petitioner's constitutional rights were violated for the reason that he was without assistance of counsel at the time he entered his plea of guilty. We find no occasion to prolong this opinion by citing or discussing decisions of the Supreme Court wherein it has been held that such a right was violated, because petitioner on brief correctly admits, "But there still can be no doubt that if the defendant freely and intelligently decides to waive his right to counsel he may do so." As shown, this issue has been decided adversely to petitioner by Judge Baker of the State Circuit Court and affirmed by the Supreme Court of Wisconsin. Judge Tehan in the instant proceeding reviewed the stipulated transcript and reached the same conclusion.

■ Our reading of the transcript leaves us without doubt that at the time of his arraignment petitioner freely and voluntarily entered his plea and intelligently waived his right to counsel. He was a mature, well educated, intelligent man, charged with an offense defined in such plain, simple terms as to make its nature evident. No lawyer could have explained the offense in more understandable language. Only a few weeks previously he had in the same Court entered a plea of guilty to an offense of the same nature. He knew that the day before his arraignment he had made a statement to the Deputy Sheriff in which he voluntarily admitted his guilt; in his presence the victim of his assault had identified him; the statutory offense with which he was charged had twice been read to him, and he had been told just previous to his arraignment that the offense was serious and carried a maximum penalty of ten years' imprisonment. He was informed by the Court of his right to an attorney and that one would be appointed if he was without funds. He told the Court that he preferred to proceed without an attorney. In fact, he was not indigent, and no reason is shown why he could not have employed an attorney had he so desired.

■ Petitioner contends that the trial Court's failure to inform him of the pro-

visions of the Wisconsin Sexual Deviates Act before he entered his plea of guilty invalidated "the apparent voluntary plea." It seems implicit in this contention that while his plea of guilty was voluntarily made, the subsequent action of the Court in committing petitioner for treatment under the Act rather than sentencing him to prison nullified the plea. The essence of this contention rests on the erroneous premise that petitioner was sentenced under an Act which might deprive him of his liberty for life when he should have been sentenced for an offense which carries a maximum period of ten years in prison.

Petitioner's contention in this respect overlooks the purpose of the Act under which he was committed. We think the statement of the trial Court made to petitioner at the time of his commitment is worth quoting:

"The purpose of the law under which you are being handled is such that it provides help and treatment, not punishment, to a person who is sexually deviated, so anything the Court does by way of disposing of this case is not by way of punishment of you, but rather by way of offering and giving you an opportunity to accept and be treated for your abnormal condition. The effect of this law is such that if the Court finds from this examination that you are sexually deviated, then any further proceedings with respect to the criminal charge is stayed indefinitely. The Court no longer pursues the criminal aspect, but rather pursues the aspect of committing you for treatment, not for punishment."

Also relevant is the statement by the State Supreme Court made in its opinion denying petitioner's Writ of Habeas Corpus:

"Petitioner was not aware of the so-called sex deviate law (sec. 959.15 Stats.). Although the statute did not require the application of sec. 959.15 to the offense of which petitioner was convicted, the county court was within its powers in deciding to apply it. In terms of length of confinement, commitment under sec. 959.15 may be less onerous than ten years' imprisonment by reason of the statutory requirement for annual examination and the right to petition the court for discharge in the event of failure to examine and provisions for parole and discharge by the department. Such commitment may be more onerous if control be extended under sec. 959.15(13), but such extensions are subject to judicial review."

No question is raised here as to the constitutionality of the Sexual Deviates Act or that it was not scrupulously adhered to in committing petitioner to the custody of the Department of Public Welfare. Sec. 959.15(2) authorizes the Court to commit a person convicted of a sex crime to the Department of Public Welfare for investigation and report, upon a finding by the Court, which was made, that the defendant "was probably directly motivated by a desire for sexual excitement in the commission of the crime." On the Department's recommendation that petitioner was in need of "specialized treatment for his mental or physical aberrations," the Court entered its order committing him to the Department for that purpose.

Thus, petitioner is not in custody by reason of a sentence imposed upon his conviction but he is held by reason of an order based upon the findings of the Court, as noted. In fact, petitioner is in custody as a patient, not as a prisoner, committed for treatment and not sentenced for punishment. The duration of his commitment depends upon the manner in which he responds to treatment, which is subject to review by the committing Court at frequent intervals. In no event, however, can his custody be retained for a longer period than the maximum term prescribed by law for the offense for which he was convicted, unless he is still considered dangerous, whereupon the Department may make application to the committing Court for an order for further commitment. Upon such application, petitioner would be entitled to a hearing, with all the safeguards of due process, including the right to counsel, to be ap-

pointed if he is not able to employ his own. After such hearing, the Court, depending on its findings, could order his discharge or further commitment.

We are unable to comprehend why petitioner should not be held to his voluntary waiver of counsel, under the circumstances of the case. As stated by the State Supreme Court, his commitment is less onerous than a prison sentence which the Court might have imposed, and certainly it furnishes the basis for a better hope of rehabilitation. We believe that any reputable attorney would have urged the Court to commit petitioner for his own wellbeing and that of the public.

The cases called to our attention are of little aid to a decision of the point under discussion. Petitioner places reliance upon Pilkington v. United States, 315 F.2d 204 (CA–4), which it is argued by analogy supports his contention. In that case a youthful defendant entered a plea of guilty on representation by the Court that the maximum penalty for the offense was five years' imprisonment. The Court sentenced him under the Federal Youth Corrections Act (18 U.S.C.A. § 5005 et seq.), under which the defendant was subject to a maximum sentence of six years. The defendant sought to vacate the judgment because of the misrepresentation; the Court of Appeals agreed and reversed the judgment for further proceedings. There was no misrepresentation by the Court in the instant case.

A case nearer in point by analogy is Rogers v. United States, 326 F.2d 56 (CA–10). In that case the defendant entered a plea of guilty to the offense charged. The Court deferred the imposition of sentence pending a presentence report by a Probation Officer. After such report was made, sentence was imposed pursuant to the provisions of the Federal Youth Corrections Act. The Court, prior to imposition of sentence, failed to make certain findings required to be made by the Act. For such failure the Court of Appeals reversed the judgment. In the instant case, as shown, the Court after petitioner's conviction made the finding required by the Sexual Devi-

ates Act as a prerequisite to its right to proceed thereunder.

It is our judgment and we so hold that no Federal constitutional right of petitioner was violated by the failure of the State Court to acquaint petitioner with the provisions of the State Sexual Deviates Act prior to the time he entered his plea of guilty.

The order of the District Court is Affirmed.

KILEY, Circuit Judge (dissenting).

I respectfully dissent from the majority opinion in so far as it holds that Butler's "ignorance of the provisions of the Sexual Deviate Law, and the failure of the court and any other person to apprise him of said provisions," before his waiver of counsel and guilty plea, did not violate the fourteenth amendment's due process clause.

The Wisconsin courts presumably thought that Butler was of sufficient intelligence and competence to make a valid waiver. There is a difference, however, between Butler's being "intelligent and competent" to make the waiver of the right to counsel, and his having the knowledge upon which to make an "intelligent and competent" waiver. An intelligent and competent waiver presupposes that in making the waiver judgment, the person has the knowledge that a person of his age, education, station and the like would need for making a prudent judgment under the circumstances.

The district court thought that although the trial court should have advised Butler "more fully," his waiver of counsel was not rendered "ineffective simply because of his ignorance of the precise provisions" of the Sexual Deviate Act.

The Supreme Court, in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), provided the classic delineation of the "waiver" doctrine:

A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The deter-

mination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

And in Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948), the main opinion of the Court elaborated upon the elements of a valid waiver:

> [It] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and the circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.[1]

The Wisconsin courts found, as the majority points out, that "Petitioner was not aware of the so-called sex deviate law (sec. 959.15 Stats.)" when he waived counsel and pleaded guilty. The Wisconsin trial court, in my view, had the duty to give him the knowledge.[2] Is it fair to assume that if a person in Butler's circumstances knew what disposition was likely to be made of him under the Sexual Deviate Act, he would have waived counsel? The motive which the Wisconsin court found for his waiver, fear of publicity and absence from work, precludes an affirmative answer. What happened to him was exactly the opposite of what he hoped for and what had motivated him to waive counsel and plead guilty. Is it likely that had he known the possible consequences and employed counsel, the course of events would have been the same?[3] It is plain that counsel would, in event of Butler's conviction, have urged probation under the Sexual Deviate Act for out-patient treatment[4]—in view of Butler's standing and employment and his

1. Although the Court was speaking of a federal trial, its language has relevance to any criminal case, where a waiver of right to counsel is involved.

2. In Von Moltke v. Gillies, 332 U.S. at 723–724, 68 S.Ct. at 323 (opinion of Justice Black), it was stated:
   We have said: "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. [Footnotes omitted.]

3. Although the probability of "success" Butler might have had, if represented by counsel, in resisting conviction or obtaining other treatment under the sex deviate act is speculative, it is interesting to note that the role of counsel in civil commitment proceedings can be effective. As reported in Defender Newsletter, March, 1966, p. 2, commenting, as follows, on the brief of petitioner in Baxstrom v. Herold, 86 S.Ct. 760 (Feb. 23, 1966):

   > "The brief submitted in behalf of Baxstrom contained statistics showing that where counsel had been assigned to represent one allegedly mentally ill, commitment was successfully resisted in 20% of the hearings. The Public Defender of Cook County, Illinois, for the period 1 December 1963 through 30 November 1964 handled 6,174 cases, of which 951 were dismissed. The Legal Aid Agency for the District of Columbia, in 1964, successfully resisted commitment in 223 cases out of a total of 639. The Atlanta Legal Aid Society handled ten cases and successfully resisted commitment in seven of these. The Public Defender of San Francisco handled 101 cases, 40 cases resulted in non-commitment. * * * (Petitioner's Brief, Appendix B, No. 219.)"

4. Upon the Welfare Department's postconviction report that Butler needed treatment, the court found Butler was sexually deviated, and "could not" and "should not" be granted probation and out-patient treatment. The court under the Act was not required to deny probation for out-patient treatment on the report.

intoxication when arrested for both the prior offense and the offense before us—suggesting suitable conditions to be imposed for protection of the public.

As the majority points out, the Wisconsin courts found Butler "deliberately and knowingly" waived counsel and pleaded guilty, motivated by fear of publicity. Those courts also stated that he was also motivated by fear of losing time at his employment.

Butler's earlier offense, although described as similar to the one before us but with an adult, was formally charged as disorderly conduct. He was fined $40.00 and he was able to avoid interference with his employment. The judge in the earlier case presided over the trial of the later offense of which he was convicted, and presumably because of the earlier experience, Butler, inexcusably but understandably, was under a misapprehension as to what faced him. He presumably thought that he could again avoid interference, through publicity or absence, with his employment, and that he would avoid publicity and soon return to work by waiving preliminary hearing, submitting to an immediate trial, waiving counsel, and, after hearing the statutory charge read to him, pleading guilty. On the day before his arraignment and conviction, Butler expressed to the chief deputy his concern about the effect of publicity of a court trial on his job and friends, and stated he wanted to get it over with as quickly as possible. The chief deputy informed him that it would take less time and involve less publicity if he waived an attorney and pleaded guilty to the charge, and that it was doubtful a lawyer could do very much good, but that he could not guarantee anything with respect to the outcome of a court hearing. Butler was told nothing before his waiver of counsel and guilty plea about the likely Sexual Deviate Act consequences, nor, before conviction, of its ranges of confinement and treatment.

My opinion is that for an "intelligent and competent" waiver of right to counsel at this trial, it was necessary for Butler to understand that if convicted he faced the possibilities of detention as a sex deviate until discharged from treatment and of detention beyond the maximum sentence for the alleged offense, with sentence for the offense meanwhile suspended. After Butler had waived counsel and pleaded guilty,[5] the court, at the commitment for detention and treat-

---

5. The transcript of court record for August 13, 1962, shows the following:

Case called by Court.

Court: Mr. Butler, do you understand what you are being charged with?

Mr. Butler: Yes, your Honor.

Court: This is a charge where you are entitled to a preliminary examination if you desire to have a preliminary examination, or you may waive your right to it. Do you understand what a preliminary examination is?

Mr. Butler: Yes, your Honor.

Court: Do you wish to have a preliminary examination or do you wish to waive your right to it?

Mr. Butler: I wish to waive my right to it.

Court: Upon the defendant waiving his right to a preliminary examination, this matter is bound over to the County Court for Walworth County, Branch II, for immediate arraignment.

(Information read to defendant by the District Attorney and filed with the Court.)

Court: Mr. Butler, you have heard the District Attorney read the charge. Do you understand the charge?

Mr. Butler: Yes, your Honor.

Court: The Court advises you that you are entitled to be represented in these proceedings by an attorney of your own choosing. In the event you are without funds to retain an attorney, the Court, upon application, would then appoint an attorney for you. Do you understand that?

Mr. Butler: Yes.

Court: Do you wish to appear with an attorney or do you wish to proceed without an attorney?

Mr. Butler: I would prefer to proceed without an attorney.

Court: How do you plead to this charge: Are you guilty or not guilty?

Mr. Butler: I plead guilty.

Thereafter, on the basis of his plea of guilty and three exhibits introduced by the state, the court found Butler guilty as charged in the Information and requested that Butler be "treated and observed under the provisions of the sex deviate law."

ment, told him he was being committed "for treatment, not for punishment," and that sentence for the offense was being "stayed indefinitely." This did not remove the harm previously done at the time of waiver and plea.

I would reverse the district court judgment and remand to the district court to retain jurisdiction for a suitable period, at the end of which Butler is to be discharged unless in that period Wisconsin authorities vacate Butler's judgment of conviction and grant him a new trial.