**Donald Bernard CUNNINGHAM,
Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 17028.**

United States Court of Appeals
Fifth Circuit.

June 9, 1958.

Rehearing Denied July 9, 1958.

Donald B. Cunningham, in pro. per., for appellant.

T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., W. Wilson White, Asst. Atty. Gen., Harold H. Greene, Atty., Isabel L. Blair, Atty., Washington, D. C., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal presents for our determination whether, as found and declared by the district judge, the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5020, is constitutional and the commitment entered under it in this case is valid as against appellant's attack upon the Act as unconstitutional as applied here to a conviction for a misdemeanor carrying a maximum punishment of one year.

The question comes up in this way: On Oct. 24, 1956, appellant was convicted on his plea of guilty to an information charging violation of Sec. 661, 18 U.S. C.A., the theft on a government reservation of a radio clock of a value less than one hundred dollars, a misdemeanor providing for a maximum sentence of one year and was "committed to the custody of the Attorney General or his authorized representative for treatment and supervision under the Federal Youth Corrections Act, 18 U.S.C.A., Sec. 5010(b), execution thereof to begin October 29, 1956". On October 29, 1957, precisely

one year later, he filed in the sentencing court a "Motion to Correct Sentence under Rule 35, Federal Rules of Criminal Procedure [18 U.S.C.A.] and Title 28 U.S.C., Sec. 2255."

Putting forward as its sole ground:

"The sentence imposed was in excess of that authorized by the Statute under which defendant was convicted."

the motion sought an order amending the judgment to provide "for imprisonment for a period of not more than one (1) year". Contending in his motion:

1. "A sentence entered for a term in excess of that authorized by the statute under which guilt was found is not void in its entirety but is void only as to the excess."

2. On Oct. 16, 1956, with Mr. Wilson, United States Attorney, appearing for the United States, the defendant for himself, the following proceedings were had before the court:

Mr. Wilson: "If the court please, this is a Shreveport Division case. It involves a misdemeanor committed on a Government reservation."

The Court: "You are entitled to the advice of a lawyer, if you feel that is necessary."

The defendant: "It isn't necessary."

The Court: "What is the nature of the charge?"

Mr. Wilson: "It is the theft of a radio-clock at Barksdale. We would like to formally arraign him."

The Court: "All right."

(At this point, the Bill of Information was read by the United States Attorney.)

The Court: "Do you understand that charge?"

The Defendant: "Yes, sir."

The Court: "How do you plead?"

The defendant: "Guilty."

The Court: "Is that the truth?"

The defendant: "Yes, sir."

The Court: "You are doing that of your own free will?"

The defendant: "Yes, sir."

The Court: "What were the circumstances?"

The defendant: "Well, your Honor, there was a couple of us and we were broke, and me and this other person went to the Base, and one of the members from the Base stated he had taken things previously. He suggested it, and I

"* * * the court was in error in ordering his commitment for a period of from four (4) to six (6) years, under the Youth Corrections Act, when the offense for which he stands convicted was a misdemeanor, and is punishable by imprisonment for not more than one (1) year."

and citing United States v. Lynch, 7 Cir., 159 F.2d 198, 199,[1] he attacks his commitment under the Youth Corrections Act as in violation of fundamental constitutional provisions.

The district judge, taking time to consider the record [2] made at the time of the

didn't object to it; and I was guilty as he was, and we got this clock."

The Court: "Have you ever been arrested before?"

The defendant: "No sir."

The Court: "How did you happen to get into this? Were you drinking?"

The defendant: "No, sir."

The Court: "Has he been finger-printed?"

The Marshal: "No returns have been received."

The Court: "I will let him enter his plea and let him be continued on the same bond. You come back next Wednesday at 1:30."

*     *     *     *     *

(The following proceedings were had in the above-entitled action on Oct. 24, 1956. Same appearances).

Mr. Wilson: "If the Court please, the defendant pleaded guilty to a bill of information charging him with the violation of 18 U.S.C. § 661 which is the theft of property valued at less than one hundred dollars. He is now ready for sentencing."

The Court: "Mr. Cunningham, are you still willing to go ahead without a lawyer?"

The defendant: "Yes, sir."

The Court: "Do you stand on your plea of guilty?"

The defendant: "Yes, sir."

The Court: "Do you wish to make any statement to the Court?"

The defendant: "No, sir."

The Court: "Mr. Cunningham, you have been in some trouble before, but not too serious. Apparently, the principal trouble with you is that you have been considerably mixed up as to the attitude you ought to have toward life. I think you also are in need of psychiatric treatment. I hope you will take advantage

entry of the plea and of the order of commitment and the state of the law, entered the following order:

"Having considered the foregoing motion, which presents only a legal question, and having studied the Congressional History of enactment of the Federal Youth Corrections Act; being of the opinion that the Act is constitutional and that the sentence imposed was legal and valid; the motion must be and is hereby denied."

Movant appealing from this order and seeking leave to appeal in forma pauperis, the district judge, stating: "It appearing that the legal question raised by appellant is not insubstantial and ought to be decided authoritatively by the Court of Appeals"; granted movant's request.

of the treatment afforded you. All things considered, and having received notice only yesterday that young men of your age can be handled now for the first time under the Federal Youth Corrections Act, the Court is going to declare you to be a youthful offender, within the meaning of the Federal Youth Corrections Act, and in lieu of the penalty of imprisonment otherwise provided by law, we are going to sentence you to the custody of the Attorney General for treatment and supervision, pursuant to the Federal Youth Corrections Act, 18 U.S.C., 5005. That means you will be sent first to a classification center at Englewood, Colorado, where you will be examined, and within thirty days a report will be made to the Federal Director of Prisons. Then he probably will send you to a place where a psychiatrist will work with you. Probably, you will also be given a chance to take part in recreational activities, and the other advantages that come from this Act.

"Where you will go after you leave the classification center, I do not know. That will be entirely up to the Board of Parole. I believe it will be helpful to you. I certainly hope you cooperate to the best of your ability, and when you come out you will be a self-respecting, God-fearing, upright young man."

3. Pointing out that Sec. 1, Title 18 U.S.C. lists offenses and classifies them:

Here with a well prepared brief, thus putting the questions for decision:

First: "Is the Federal Youth Corrections Act, 18 U.S.C.A., 5005 et seq. applicable to conviction for misdemeanors?"

Second: "May Congress authorize the imposition of sentences more severe upon youth offenders than may be imposed upon more mature offenders for violation of the same offense?"

Appellant insists that to impose, as the court did here, upon a person under twenty-one years of age, who has been convicted of a misdemeanor carrying a maximum sentence of only one year, a sentence of from four to six years in the custody of the Attorney General, is to impose cruel and unusual punishment.

Quoting the several statutes, on which he relies for his point,[3] he queries: "How

(1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony; and
(2) Any other offense is a misdemeanor; appellant continues:

"Section 4083, Title 18 U.S.Code provides:

"'* * * A sentence for an offense punishable by imprisonment for one year or less shall not be served in a penitentiary without the consent of the defendant.'

"Section 662, Title 18 U.S.Code provides:

"'Whoever * * * buys, receives, or conceals any * * * other things which may be subject to larceny * * * if the amount or value of thing so taken, stolen or embezzled does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.'

"The Federal Youth Corrections Act, Sec, 5010(b) Title 18 U.S.Code provides:

"'If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter;

can a court possibly be empowered to accept a plea of guilty to an offense when the defendant knowingly enters such a plea to an offense, the maximum punishment allowed for which is one year and the court then suddenly receives the power to impose a four to six year sentence?" So querying, he urges upon us that on the first question it must be held that, since he was found guilty of an offense for which he could be sentenced to serve no more than one year and in no event in the penitentiary, and nevertheless he was committed for a term of from four to six years, under which he could be put under any kind of custody including the penitentiary, the sentence sought to be imposed upon him over and above the one year he has served is void and he is entitled to release.

On the second question, invoking the Eighth Amendment and citing O'Neil v. State of Vermont, 144 U.S. 323, 12 S.Ct. 693, 36 L.Ed. 450, he argues that on its face a commitment to the custody of the Attorney General for a term of from four to six years when the offense of which he was convicted provides a maximum punishment of only one year is cruel and excessive and deprives him of due process of law.

For the reasons hereafter briefly stated which apply with equal force to both questions posed by him, we think it clear that both of them must be answered against his contentions and for affirmance.

As pointed out in the Government's brief,[4] the Youth Corrections Act applies to convicted persons under the age of twenty-two years at the time of the conviction and is designed to provide such persons with correctional treatment looking to their complete rehabilitation in lieu of punishment, that is with preventive guidance and training, and all of

"Section 5017(c), supra, provides:

" 'A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.' "

4. "The statute grew out of a study conducted by a subcommittee of a committee of the Judicial Conference of the United States, consisting of Chief Judge Orrie L. Phillips, Judge John C. Collet, and Chief Judge Carroll C. Hincks. Recommendations adopted by this committee were approved by the Judicial Conference in Sept., 1949, and were embodied in the bill which ultimately became the Youth Corrections Act. The objectives of the Act have been endorsed by a number of Circuit conferences, by a majority of the District Judges, by the American Law Institute, and by other organizations. See Senate Report No. 1180, 81st Cong., 1st Sess. to accompany S. 2609, pp 3–4; House Report No. 2979, 81st Cong. 2d Sess. to accompany S. 2609, pp 2–3; and the testimony of Chief Judge Phillips during the hearings before a Subcommittee of the Senate Judiciary Committee on a 'Correctional System for Youth Offenders', S. 1114 and S. 2609,

81st Cong. 1st Sess. (hereinafter referred to as 'Hearings'), p. 62.

"As stated in the House Report, the statute is designed to make available for the discretionary use of the federal judges a system for the sentencing and treatment of youth offenders that will promote the rehabilitation of those who show promise of becoming useful citizens and so will avoid the degenerative and needless transformation of many of those persons into habitual criminals. To that end, it provides for a system of analysis, treatment, and release that will cure, rather than accentuate the anti-social tendencies that have led to the commission of crime. This is done by permitting the substitution of correctional rehabilitation for retributive punishment. It marks a departure from the punitive idea of dealing with criminals and looks primarily to the objective idea of rehabilitation. H.Report No. 2979, 81st Cong., 2d Sess. p. 1.

"In these aims, the Act is based upon principles and procedures developed under what has become known as the Borstal system, which has been in successful operation in England since 1894. It also borrows from youth authority statutes in California, Minnesota, Wisconsin, Massachusetts, and Texas, and from a model act proposed by the American Law Institute in 1941."

its provisions are designed, enacted and enforced with that end in view.

While no federal case has been cited to us, and we have found none construing the act or otherwise dealing with the precise questions here presented, many well reasoned state cases have been and may be cited holding with respect to them directly contrary to appellant's contentions. Cases precisely dealing with and authoritatively deciding contrary to his contention, that the Youth Corrections Act is not applicable to a conviction for a misdemeanor, are State v. Heitman, 105 Kan. 139, 181 P. 630, 8 A.L.R. 848, and People v. Scherbing, 93 Cal.App.2d 736, 209 P.2d 796. In each of these cases the court, in an opinion comprehensively canvassing the contentions and counter-contentions made in respect of legislation claimed, as here, to be discriminatory, effectively and correctly set forth the reasons underlying and supporting the enactment of the legislation, and as effectively and correctly, we think, rejected the attacks upon the statute as unfounded.

We turn, then, to the second ground, that the act is unconstitutional and the sentence invalid as depriving the defendant of due process, to say of the attack that when it is examined, in the light of the record made when the plea was entered and the sentence imposed, of the legislative powers of congress, and of the considerations underlying and supporting the act, it will be seen to be equally unfounded in fact and in law.

It is unfounded in fact because the record affirmatively establishes: that the defendant voluntarily waived counsel and entered his plea, stating to the court the circumstances of the offense; and that, carefully advised by the court of the existence and benefits of the Youth Corrections Act and his opportunity to receive its benefits by being committed as a youthful offender "in lieu of the penalty of imprisonment otherwise provided by law"; defendant did not object but tacitly assented thereto. It is unfounded in law because the act is based upon modern and improved penological views and methods, not merely of crime and its punishment but of correction and rehabilitation also, including the extension and new application, in the field of youth corrective penology, of the theory of, and the provisions for indeterminate sentences, long in force and accepted in nearly all of the states. It, therefore, provides for and affords youthful offenders, in the discretion of the judge, not heavier penalties and punishment than are imposed upon adult offenders, but the opportunity to escape from the physical and psychological shocks and traumas attendant upon serving an ordinary penal sentence while obtaining the benefits of corrective treatment, looking to rehabilitation and social redemption and restoration. General in its scope and without limitation, if the power of Congress to provide for correctional, as well as punitive, treatment of offenders is conceded, as we think it must be, no constitutional reason presents itself why Congress could not, indeed should not, make the general distinction made here between the treatment of persons over and those under twenty-two years of age, a distinction long embodied in the law in connection with reform and training schools and other similar measures provided for young offenders. Indeed, the provisions made in the act seem natural and reasonable. Similar acts have been adopted and are in force in many of the states.[5] In State v. Meyer, 228 Minn. 286, 37 N.W.2d 3, the Supreme Court of Minnesota, speaking through Justice Knutson, in an eloquent opinion, which will fully repay reading in full, construing and applying one of these acts, the Minnesota Youth Conservation Act, M.S.A. §§ 260.125, 260.13, has in a thorough-going and, we think, unanswerable way not only met and refuted all the objections made against and estab-

---

5. Cf. the interesting and informative article, "Sentence and Release of Youth-ful Offenders, The Youth Correction Authority Act, 34 Minn.Law Review, 532.

lished the undoubted validity of such laws but shown affirmatively their essential benevolence and beneficence, indeed their necessity in dealing with the problems of youth correction control and socialization.

■■ While appellant does not here invoke, as indeed he cannot, the equal protection clause of the Fourteenth Amendment, against the classification of which he complains, it has been definitely settled by the decisions of state courts in states which have such laws [6] and in general by the decision of the Supreme Court of the United States in State of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744, that classifications of the general nature of that involved here are not invalid. These and other cases uniformly hold that: while arbitrary or unreasonable classifications may not be set up, there must be differences in character, condition or situation to justify the distinction; that the distinctions and differences in short must bear a due and proper relation to the classification; the equal protection of the laws is afforded if the law in question operates in the same general way on all who belong in the same class. For the same reasons it will not avail appellant under this record to claim under Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884, that the due process secured by the Fifth Amendment has been in any way denied him.

The judgment was right. It is affirmed.

RIVES, Circuit Judge (dissenting).

I agree that the Federal Youth Corrections Act is constitutional on its face, and I feel sure that it can be constitutionally administered, but, under the facts and circumstances of this case, the application of the Act so as to deprive the appellant of his liberty for more than one year is, in my opinion, an unconstitutional application.

At the time that appellant waived counsel and pleaded guilty [See the proceedings of October 16, 1956 in footnote 2 to the majority opinion.] nothing was said about the Youth Corrections Act. Eight days later, the judge had him confirm his waiver of counsel and plea of guilty, and *thereafter* announced: " * * * All things considered, and *having received notice only yesterday* that young men of your age can be handled *now for the first time* under the Federal Youth Corrections Act, the Court is going to declare you to be a youthful offender * * *." (Emphasis supplied.) [See the proceedings of October 24, 1956 in footnote 2 to the majority opinion.]

I cannot find in the record that the appellant assented tacitly or otherwise. He had no alternative but to submit to the Court's sentence. Indeed, he was not even then informed that he might be deprived of his liberty for more than one year, and he still had the right to assume that such was the maximum limit of his confinement.

A defendant charged with a misdemeanor might be willing to waive counsel and plead guilty if he thought that he could be imprisoned for not more than one year, while, if he realized that he might be imprisoned for as much as six years, he would cry to High Heaven for a lawyer. To be valid, waiver of counsel must be made "with an apprehension of the nature of the charges, * * * the range of allowable punishments thereunder, * * *." Von Moltke v. Gillies, 1948, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309.

The appellant did not know and was not advised at or before the time he waived counsel and pleaded guilty that he might be deprived of his liberty for more than one year. That was a necessary prerequisite, I think, to his detention for a longer period. I would hold that he has been deprived of his liberty for the maximum time that he

---

6. Cf. Ex parte Liddell, 1892, 93 Cal. 633, 29 P. 251; In re Herrera, 1943, 23 Cal.2d 206, 143 P.2d 345, a leading case in the Youth Correction field.

could have apprehended at the time of his waiver of counsel and plea of guilty, and that he is therefore entitled to be discharged.

A further unconstitutional application of the Act is evidenced by the hearing before this Court on a record to a material portion of which the appellant is denied access. In my book that is not procedural due process. On both grounds, I respectfully dissent.

Rehearing denied: RIVES, Circuit Judge, dissenting.