Dennis Eugene JOHNSON, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 10989.

United States Court of Appeals
Fourth Circuit.

Submitted Feb. 9, 1967.

Decided March 13, 1967.

Winter, Circuit Judge, dissented.

Dennis Eugene Johnson, Jr., on brief for appellant.

Thomas J. Kenney, U. S. Atty., and Theodore R. McKeldin, Jr., Asst. U. S. Atty., on brief for appellee.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

Dennis Eugene Johnson, Jr., was convicted in the United States District Court for the District of Maryland of transporting a stolen motor vehicle in interstate commerce,[1] and was committed for

---

1. 18 U.S.C.A. § 2312.

treatment and supervision under the provisions of the Federal Youth Corrections Act.[2] In his motion to vacate the sentence filed in the court below Johnson contended that he had not been advised by the court at the time he pleaded guilty of the provisions of the Youth Corrections Act. He also argued that his sentence was invalid because the Youth Corrections Act provides for a longer possible term of confinement than the substantive offense of which Johnson was convicted.

The district court denied the motion without a hearing, and Johnson has appealed.

Before denying the motion, the district court examined the official reporter's transcript of Johnson's arraignment. A portion of that transcript indicates that the following colloquy occurred:

"THE COURT: And you understand that you might receive a straight sentence of up to five years as a result of your plea?

"THE DEFENDANT: Yes.

"THE COURT: Or because of your age you might be sentenced under the Federal Youth Correction Act, in which event you might receive a prison sentence, an indeterminate prison sentence, which might mean that you might spend as much as four years in prison and have two years probation or parol thereafter.

"THE DEFENDANT: Yes.

"THE COURT: You understand that?

"THE DEFENDANT: Yes."

In Pilkington v. United States, 315 F. 2d 204 (4th Cir. 1963), relied on by Johnson, we held that before a youthful offender may be sentenced under the Federal Youth Corrections Act upon his plea of guilty, he must be advised of the potential maximum sentence under that Act as part of the determination of whether his plea was understandingly and vountarily made. But in *Pilkington* the trial judge had *not* advised the ac-

cused of his possible confinement under the Youth Corrections Act. Johnson's situation is obviously dissimilar.

■ Johnson not only knew that he might be sentenced under the Youth Corrections Act but the provisions of that Act were not incorrectly explained to him. Implicit in the explanation was the possibility of confinement for as long as six years. If Johnson understood what was said to him, as he said he did, and we should not assume otherwise, then he understood that after four years confinement he might face two years probation or parole. The standard dictionary[3] defines "parole" in terms of conditional and *revocable* release. Four plus two makes six.

■■ We think the information given Johnson barely sufficient to enable the district judge to determine voluntariness. Fed.R.Crim.P. 11. Certainly nothing less would suffice, and it would have been far better to have flatly told Johnson that he might be confined for as long as six years. We reiterate our admonition to district judges contained in our *Pilkington* decision that they must "explain the sentencing possibilities presented by the Federal Youth Corrections Act before finally accepting guilty pleas from youthful defendants and passing sentence under that Act" because "it is imperative that the youthful defendant shall be aware of the range of sentences to which the plea exposes him." Pilkington v. United States, supra, 315 F.2d at 210.

■ Johnson's second contention is without merit. The Youth Corrections Act specifically provides that its provisions may be imposed in lieu of penalties otherwise applicable. 18 U.S.C.A. § 5010 (b). Its application in this respect does not violate due process. See Rogers v. United States, 326 F.2d 56 (10th Cir. 1963); Cunningham v. United States, 256 F.2d 467 (5th Cir. 1958).

Affirmed.

2. 18 U.S.C.A. §§ 5005–5024.

3. Webster's Third New Int'l Dictionary 1644 (1961).

WINTER, Circuit Judge (dissenting):

I agree that the Youth Corrections Act, 18 U.S.C.A. § 5005 et seq., does not violate due process. The conclusion of the majority that the requirements of the *Pilkington* case were met is supported by Hale v. United States, 347 F.2d 367 (10 Cir. 1965), but as one who participated in deciding *Pilkington* I am constrained to state how the decision of the majority departs from *Pilkington* and my unwillingness to join in the departure.

*Pilkington* decided that when an accused was told only that he could be sentenced to a term of five years if his plea of guilty to a violation of 18 U.S.C.A. § 661, which authorized imprisonment for not more than five years, were accepted, he could not be sentenced under the Youth Corrections Act, absent a showing that he knew the maximum penalties to which he was exposed under the latter. This was so, as we stated in *Pilkington*, footnote 2, 315 F.2d 208, because the Youth Corrections Act:

" * * * requires a conditional release after not more than four years; but the defendant is then under supervision for two more years, *and if he violates any condition of his conditional release, he may be returned to serve up to six years from the date of his conviction.* Revocation of a release order does not require the same type of proof as is necessary to convict for a crime. The summary procedure is made possible because of the original sentence, which may run six years. * * * " (emphasis supplied)

Thus, we held that for his disposition under the Act on his plea of guilty to be valid, the offender must know that he may be confined up to four years, and then on conditional release up to two years, and that if he violates his conditional release, he may be confined again for the balance of six years from the date of original sentence.

*Pilkington,* as the authorities cited therein, and as our subsequent decisions demonstrate (see, for example, Townes v. United States, 4 Cir., 371 F.2d 930 (1966)), was but an aspect of our continued insistence that a defendant shall not be permitted to plead guilty unless the plea is made freely and voluntarily. For a guilty plea to be made freely and voluntarily, a defendant must know, *inter alia,* the full potential consequences of his plea. In departing from *Pilkington,* the majority departs also from the rule so carefully established in our prior opinions. There is no justification for this aberration. The holding of *Pilkington* has been expressly adopted in Freeman v. United States, 350 F.2d 940 (9 Cir. 1965); Chapin v. United States, 341 F.2d 900 (10 Cir. 1965); impliedly adopted in Kotz v. United States, 353 F.2d 312 (8 Cir. 1965); rejected in Rawls v. United States, 330 F.2d 777 (5 Cir. 1964); and adverted to in United States ex rel. McGrath v. LaVallee, 348 F.2d 373 (2 Cir. 1965); Butler v. Burke, 360 F.2d 118 (7 Cir. 1966); and Workman v. United States, 337 F.2d 226 (1 Cir. 1964).

In the case at bar, Johnson was told that if treated as an adult offender he might be sentenced to five years or, if treated as a youth offender, he might receive an indeterminate sentence " * * which might mean that you might spend as much as four years in prison and have two years probation or parole thereafter." Johnson was not told that, while on probation or parole, if he violated the terms of his conditional release he could be reincarcerated for the balance of the six-year period.

The majority find that in the explanation given to Johnson there was implicit "the possibility of confinement for as long as six years." The majority strongly suggests, but stops short of so finding, that Johnson understood that two years probation or parole thereafter might be revoked. Support for this conclusion is found in a standard dictionary definition of "parole." I feel impelled to comment that courtrooms are not ordinarily equipped with Webster's Third New Int'l. Dictionary (1961), nor are defendants, in colloquy with the presiding judge,

ordinarily afforded an opportunity to consult any dictionary.

I can conclude only that from what was told him by the district judge, Johnson did not know his possible maximum exposure to penalty under the Youth Corrections Act. I would remand the case to the district judge for an evidentiary hearing to determine if Johnson knew that fact from his general knowledge, from some other court official, from his attorney, or from any other source. Absent a determination that the omission of the district judge was thus rendered harmless, Johnson's motion should be granted and his plea stricken.