## JAMES R. PERRY *v.* STATE OF MARYLAND

[No. 335, September Term, 1970.]

*Decided February 19, 1971.*

The cause was submitted to MURPHY, C.J., and MORTON and POWERS, JJ.

*Robert L. Westheimer* for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Sandra O. O'Connor, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

To a three-count indictment charging assault with intent to rape, assault with intent to carnally know a child under the age of fourteen years and common law assualt and battery, appellant pleaded guilty to the third count. He was sentenced to three years imprisonment and referred to Patuxent Institution to determine whether he could be classified as a defective delinquent.

In this appeal it is asserted that the plea of guilty was not knowingly and voluntarily entered because the possibility of appellant's confinement in the Patuxent Institution as a defective delinquent "was never explained, defined or mentioned."

It is clear from the colloquy between the trial judge and the appellant and the trial judge's admonitions to appellant, all of which are set forth in the record before us, that appellant understood (1) the nature of the charge to which he pleaded guilty, (2) the sentence that legally could be imposed and (3) the constitutional rights he would forego as enunciated in *Boykin v. Alabama,* 395 U. S. 238. Appellant does not contest the voluntariness of his plea or question that it was knowingly and intelligently entered, except in one respect: that he would not have entered the plea had he known of his possible confinement in the Patuxent Institution.

It is true that the acceptance of a guilty plea "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences." *Boykin,* at 243-244. But in the course of a canvass the trial judge cannot be expected to spell out every conceivable ramification or possible consequence

that might flow from the entry of a guilty plea since no one can, with certainty, predict or foresee each and every link in the chain of events which might ensue. As stated in *Joseph v. Esperdy*, 267 F. Supp. 492, (U.S.D.C., N. Y. 1966), "* * * it seems onerous and absurd to expect a judge to explain to each and every defendant who pleads guilty the full range of *collateral* consequences of his plea and, indeed, to anticipate what those collateral consequences are." In *Joseph* it was held that the failure of the trial judge to advise the defendant that he might be deported as an alien by pleading guilty did not make the plea involuntary. See also *Myers v. United States*, 375 F. 2d 515 (6th Cir. 1967); cf. *Pilkington v. United States*, 315 F. 2d 204 (4th Cir. 1963).

In the case at bar the trial judge advised appellant that he was presumed to be innocent; that he had the right to plead not guilty, remain silent and compel the State to prove his guilt beyond a reasonable doubt; that he had the right to cross-examine the State's witnesses; that he had the right to a jury trial or a court trial; and, finally, that by pleading guilty he would waive these constitutional rights. In addition, the trial judge ascertained from the appellant that he understood the nature of the crime of assault and battery; that the State had made no promises, inducements or threats to him; and explained to the appellant the limits of the sentence that could be imposed. That he was not advised that he might be sent to Patuxent Institution for an evaluation as a possible defective delinquent did not make acceptance of the plea constitutionally impermissible.

*Judgment affirmed.*