CLIFTON EDWARD BAILEY, a/k/a RONALD
DALE SCHREFFLER *v.* STATE OF
MARYLAND

[No. 630, September Term, 1970.]

*Decided June 25, 1971.*

398

The cause was argued before ORTH, THOMPSON and CARTER, JJ.

*Fred Warren Bennett,* with whom were *Lambert, Furlow, Elmore & Heidenberger* on the brief, for appellant.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Edmond O'Connell, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

When Clifton Edward Bailey, also known as Ronald Dale Schreffler, was brought to trial in the Circuit Court for Prince George's County on 28 April 1970 he pleaded guilty to breaking the dwelling house of Alton Parker Burgess on 6 July 1969 in the daytime with intent to steal goods therein, Criminal Trials 9265. The plea was accepted by the court. The docket entries show that the same day a pre-sentence report of an investigation made by the Department of Parole and Probation was filed and that a sentence of 10 years to commence as of 7 July 1969 was imposed. The report states it was dictated 16 April 1970 and transcribed 22 April 1970. It had been ordered upon the conviction of appellant on 11 March 1970 by a jury of the breaking of the dwelling of Adam Moroski, Criminal Trials 9329, and gave the State's version and appellant's version of that offense only. By order of 28 April 1970 appellant was sent to Patuxent Insti-

tution for evaluation as a possible defective delinquent. On 4 December 1970 under post conviction procedures he was granted a belated appeal in Criminal Trials 9265 by order of the Circuit Court for Prince George's County and that appeal, filed on 14 December 1970, is now before us.

The judgment is reversed on appellant's claim that the acceptance of his plea of guilty was not effective. The record does not disclose that the court had before it any factual basis whatsoever for the plea nor does it affirmatively show, as it must, that appellant waived, under the standard applicable to waiver of constitutional rights, his privilege against compulsory self-incrimination and the right to confront his accusers. *Boykin v. State of Alabama*, 395 U. S. 238; *McCall v. State*, 9 Md. App. 191, as modified by *Williams v. State*, 10 Md. App. 570. Therefore it was error to accept the plea and the judgment resulting therefrom must be set aside with the grant of a new trial.

In *Perry v. State*, 11 Md. App. 302, we held that the failure to advise a defendant that he could be sent to Patuxent Institution for an evaluation as a possible defective delinquent did not make acceptance of his plea of guilty constitutionally impermissible. At 304. We deemed such a consequence to be collateral and thought it "onerous and absurd to expect a judge to explain to each and every defendant the full range of collateral consequences of his plea and, indeed, to anticipate what those collateral consequences are", quoting *Joseph v. Esperdy*, 267 F. Supp. 492 (U.S.D.C.,N.Y.1966). Appellant urges us to depart from our holding in *Perry* on the strength of *James v. United States*, 388 F. 2d 453 (5th cir. 1968), and *Johnson v. United States*, 374 F. 2d 966 (4th cir. 1967) in which was discussed *Pilkington v. United States*, 315 F. 2d 204 (4th cir. 1963) which we cited in *Perry* for comparison. *James, Johnson* [1] and *Pilkington*

---

1. The judgment was affirmed in *Johnson* by a majority because it thought the information given Johnson "barely sufficient to enable the district judge to determine voluntariness." At 967. Winter, Circuit Judge, dissented.

each involve the Federal Youth Corrections Act, 18 U.S.C.A. §§ 5005-5024. The Act gives authority to impose its provisions on a youthful offender in lieu of penalties otherwise applicable, § 5010 (b), even though for a longer term of confinement than the sentence authorized for the substantive offense. *James, Johnson* and *Pilkington* held that before a youthful offender may be sentenced under the Act upon his plea of guilty, he must be advised of the potential maximum sentence under that Act as part of the denomination of whether his plea was understandingly and voluntarily made. *Johnson* at 967. The court pointed out in *Pilkington,* at 208, that the Act "is based upon modern penological views and methods and aims at correction and rehabilitation rather than punishment," and observed that it was "constitutionally permissible to provide special procedures for sentencing youthful offenders." But it said this was beside the point, the point being that the defendant was permitted to plead guilty under a misapprehension as to the *penalties* to which the plea subjected him." (emphasis supplied). It is because the Youthful Offenders Act empowers a penalty to be imposed on the conviction of the substantive offense that distinguishes it from the Defective Delinquency Act and renders the rationale of *James, Johnson* and *Pilkington* not apposite. The United States Court of Appeals for the Fourth Circuit makes clear the difference between the Federal Youth Corrections Act and the Maryland Defective Delinquent Act in *Tippett, et al. v. State of Maryland,* 436 F. 2d 1153, decided 4 January 1971. It said: "The [Defective Delinquent] Act sets up a comprehensive scheme for referral, examination, commitment, treatment and release of persons suspected of being defective delinquents. * * * As written by the legislature, construed by the courts, and applied by the staff, the Act selects a medically and legally recognizable class of persons for special treatment. Although criminal conduct is necessarily bound up in every case, the inquiry does· not focus on particular criminal acts but on the mental and emotional condition

of the person thought to be a member of the statutorily defined class. It is that, and no other factor, which ultimately determines his classification and treatment. In this context, the determination of the proceedings as civil rather than criminal is not a semantic exercise but a factual description of what occurs." At 1155 and 1157. So there is a real basis for distinguishing between the nature of confinement under the penal statutes and of commitment to Patuxent Institution under the Defective Delinquent Act. Referral to Patuxent Institution for evaluation as a possible defective delinquent and even subsequent commitment upon a determination of defective delinquency is neither penalty nor punishment for commission of the criminal offense to which a defendant pleads guilty. We are not persuaded to depart from our holding in *Perry* and expressly reaffirm it.

*Judgment reversed; case remanded for a new trial.*