**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joyce Loraine LEMING,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lash LA RUE, Defendant-Appellant.**

**Nos. 74-2455, 74-2528.**

United States Court of Appeals,
Ninth Circuit.

Aug. 4, 1975.

Rehearing and Rehearing En Banc
Denied Nov. 13, 1975.

Certiorari Denied March 22, 1976.

Robert L. Boles (argued), San Diego, Cal., for defendant-appellant Leming.

Lewis A. Wenzell (argued), San Diego, Cal., for defendant-appellant La Rue.

James W. Meyers, Asst. U. S. Atty., on the La Rue brief, Richard E. L. Strauss, Asst. U. S. Atty., on the Leming brief, Richard E. L. Strauss, Asst. U. S. Atty., (argued), Harry D. Steward, U. S. Atty.,

## OPINION

Before DUNIWAY and CARTER, Circuit Judges, and WEIGEL *, District Judge.

CARTER, Circuit Judge:

These appeals, presenting similar contentions, were consolidated for argument. A complaint charging a felony was first filed against each defendant; then, following plea bargaining, the government filed as to each defendant an information charging possession of a controlled substance, a misdemeanor under 21 U.S.C. § 844. Each defendant pled guilty and was sentenced on the information charging a misdemeanor; sentence was imposed under the Youth Corrections Act, 18 U.S.C. § 5010.

Each defendant was sent to a youth institution.

Leming contends (1) the sentence for a term exceeding one year constitutes infamous punishment and that an indictment was required; (2) sentence under the Youth Corrections Act deprived her of due process and equal protection under the law and constitutes cruel and unusual punishment.

La Rue raises (1) above and (2) that the sentence deprived him of equal protection under the law.

## THE PROCEEDINGS BELOW

### Leming

On February 7, 1973, a complaint was filed charging Leming with possession with intent to distribute approximately 4.3 grams of heroin, 23.5 grams of marijuana, and 89 amphetamine tablets, a felony in violation of 21 U.S.C. § 841(a)(1).

The parties stipulated that there was a plea bargain that the government would file a superseding information charging Leming with a violation of 21 U.S.C. § 844, possession of a controlled substance, a misdemeanor, and would dismiss the felony charge and recommend probation in exchange for a plea of guilty to the information.

On May 11, 1973, the information was filed under 21 U.S.C. § 844, charging possession of 89 amphetamine tablets.

On June 18, 1973, Leming, represented by counsel, offered a plea of guilty to the misdemeanor charge. The possible six-year length of a Youth Act sentence was fully explained by the court and the record clearly shows a voluntary, intelligent and informed plea. The court accepted and entered the guilty plea.

Through counsel, Leming asked the court for a probationary sentence under 18 U.S.C. § 5010(a). On July 30, 1973, she was placed on probation under 18 U.S.C. § 5010(a) for a period of three years. Among the conditions of the probation were provisions (1) that she obey all laws; (2) that she not use or possess narcotics, marijuana, LSD or dangerous drugs in any form, and (3) that she participate in a drug abuse program.

Before making the order final the court asked her if the proposed sentence was agreeable to her and she confirmed her desire to be so sentenced.

Less than a year later, on June 17, 1974, she was charged with violation of probation. Hearings were held on June 24 and 27, 1974, at which she admitted the charges of (1) use of narcotics, and (2) conviction and sentence for forgery. On June 27, 1974, probation was revoked and she was sentenced to the custody of the Attorney General under 18 U.S.C. § 5010(b). She appeals from this sentence.

Only after Leming, a year later, proved herself incapable of complying with the conditions of probation and revocation of probation proceedings were filed, did she raise for the first time a belated objection to her sentence.

### La Rue

On May 29, 1973, a complaint was filed against La Rue charging illegal importation of five kilos of marijuana, one-quarter ounce of marijuana, and one-tenth gram of

---

* Honorable Stanley A. Weigel, United States District Judge, Northern District of California, sitting by designation.

heroin, a felony, in violation of 21 U.S.C. §§ 952, 960 and 963. [We take judicial notice of the records of the district court.] Plea bargaining followed.

On June 22, 1973, as a result of the plea bargaining, an information was filed charging La Rue with possession of one-quarter ounce of marijuana, one-tenth gram of heroin, and five kilos of marijuana, a misdemeanor under 21 U.S.C. § 844. On that date the district judge struck from the information the reference to the five kilos of marijuana, not as part of plea bargaining, but because La Rue admitted the importation of the small amounts of contraband but denied knowledge of the five kilos. La Rue, represented by counsel, offered a guilty plea to the possession of the remainder of the contraband listed in the information.

La Rue was fully advised by the court of the possible six-year length of the Youth Act sentence and the record clearly shows a voluntary, intelligent and informed plea. The court accepted the guilty plea and after sentence dismissed the felony complaint.

As part of the plea bargain, the government agreed not to ask for more than a one-year sentence and would recommend against an indeterminate sentence under 18 U.S.C. § 5010(b). There was no agreement as to a recommendation of a probationary sentence under 18 U.S.C. § 5010(a). The agreement provided that the court was not "tied" to the recommendation and the court expressly informed La Rue that although both the government and La Rue's attorney had agreed to recommend against a § 5010(b) sentence, the court could still impose that sentence. Through his counsel, defendant asked for a probationary sentence under § 5010(a).

On August 3, 1973, La Rue was sentenced under the Youth Corrections Act, 18 U.S.C. § 5010(b), to the custody of the Attorney General for appropriate treatment and supervision.

La Rue then filed his first motion to correct his sentence under Rule 35, F.R. Crim.P. It was denied and he did not appeal. Thereafter, on May 15, 1974, he filed a second motion under Rule 35. After hearing, the motion was denied and he took this appeal.

La Rue was in state custody on a marijuana charge at the time of sentence, and was subject to a hold from Vallejo, California, involving conspiracy, burglary and theft of property. Proceedings were pending in Reno, Nevada, and in both the Army and the Marine Corps. The trial court explained to La Rue that the federal sentence must run consecutive to the state charges.

We do not reach the questions presented by defendants, since we hold that as to each of them there was an intelligent and knowing waiver of any right to an indictment as a part of plea bargaining, approved by the court, and a voluntary and understanding plea of guilty by each. Under these circumstances they may not attack the validity of the sentences under the Youth Corrections Act.

In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Supreme Court stated that a plea of guilty "entered by one fully aware of the direct consequences, *including the actual value of any commitments made to him* by the court, prosecutor, or his own counsel, must stand unless induced by threats . . . misrepresentation . . [or improper promises]." *Id.* at 755, 90 S.Ct. at 1472 (emphasis added). Once such a guilty plea is entered following fair plea bargaining knowingly entered into and accepted, the defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

Here each defendant had been originally charged with a felony. Pursuant to plea bargaining, the information charging a misdemeanor was filed and the felony complaint dismissed. Each defendant, through counsel, asked for a probationary Youth Act sentence under 18 U.S.C. § 5010(a). Each was told that the court's hands were not tied in imposing a sentence under 18 U.S.C. § 5010(b).

Each defendant desired to avoid the felony charge. Each hoped to get probation under the Youth Act. (Leming in fact, originally received a probationary sentence.) Each received the major matter bargained for, the dismissal of the felony charges and a Youth Act sentence. Each defendant, represented by competent counsel, was carefully advised by the court of his or her rights and the possible term of imprisonment under the Youth Corrections Act. Neither defendant may now attack his or her sentence under the Youth Corrections Act. *Young Hee Chow v. United States,* 322 F.2d 64, 65–66 (9 Cir. 1963).

The trilogy of *Brady v. United States, supra, McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), concerning the binding effect of a voluntary, informed plea of guilty when represented by competent counsel, by analogy, supports our decision. *Tollett* and *Young Hee Choy* directly support the decision.

The judgments are affirmed.

WEIGEL, District Judge (dissenting).

I respectfully dissent. The effect of the majority decision is to condone a prison sentence in excess of the maximum of one year specified by the relevant statute.

Appellants are confined under the provisions of the Youth Corrections Act, 18 U.S.C. § 5005 *et seq.,* for a possible six year term.[1] The maximum term had they been sentenced as adults is one year in prison.[2] They show that Youth Corrections Act confinement is in no way different from ordinary prison; and they argue that their six year liability under § 5010(b) therefore deprives them of due process and equal protection.

### I

The majority holds that appellants may not raise that issue because they made plea bargains and pleaded guilty. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and *Young Hee Choy v. United States,* 322 F.2d 64 (9th Cir. 1963) are said to support the result "directly"; the trilogy of *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) is also relied upon.

What *Tollett* and the *Brady* trilogy hold is that a person who convicts himself out of his own mouth may not later complain that the government, left to its own devices, would not have been able to convict him in accord with the rules. A guilty plea replaces and makes superfluous the government process of investigation and prosecution. Constitutional defects in that process are therefore irrelevant to the issue of guilt; their existence does not impugn "the accuracy of the defendant's admission that he committed the crime." *McMann, supra,* 397 U.S. at 773, 90 S.Ct. at 1450. *See also, Brady, supra,* 397 U.S. at 757, 758, 90 S.Ct. 1463, 25 L.Ed.2d 747. Therefore, such such defects shall not be grounds for vacating a guilty plea, voluntarily and intelligently made. *Tollett, supra,* 411 U.S. at 267, 93 S.Ct. 1602, 36 L.Ed.2d 235. But that reasoning, which applies to the process of proving guilt, does not apply to the process of punishing.

A guilty plea does not make superfluous the government's duty to apply punishment in conformity with law and the Constitution; and there is nothing self-contradictory about admitting guilt and then insisting on being punished fairly. The reasoning of *Tollett,* which deals with constitutional attacks by a defendant on the validity of his own guilty plea, does not necessarily extend to constitutional attacks on the validity of a sentence imposed by a judge; and the majority offers no reason for such an expansive reading, though it will greatly affect

---

**1.** 18 U.S.C. § 5010(b); 18 U.S.C. § 5017(c).

**2.** 21 U.S.C. § 844(a).

the rights of criminal defendants who plead guilty.

Moreover, *Tollett* does not apply in terms. The opinion explains that "[A] guilty plea represents a break in the chain of events *which has preceded* it in the criminal process," 411 U.S. at 267, 93 S.Ct. at 1608 (emphasis added), and it clearly limits the waiver inherent in a guilty plea to "claims relating to the deprivation of constitutional rights that occurred *prior* to the entry of the guilty plea." *Id.* (emphasis added). *See also* 411 U.S. at 265–66, 93 S.Ct. at 1607. Without explanation, the majority here extends the *Tollett* principle to constitutional claims arising from the process of punishment, which takes place *after* the guilty plea and conviction—after the "break in the chain."

The majority opinion lays emphasis on the fact that both appellants engaged in plea bargaining. This, of course, is the case in the great majority of persons who enter guilty pleas. *Cf. Brady, supra,* 397 U.S. at 751–52, 90 S.Ct. 1463, 25 L.Ed.2d 747; *Tollett, supra,* 411 U.S. at 261–64, 93 S.Ct. 1602, 36 L.Ed.2d 747. It does not offer an independent ground for finding waiver. The majority seems to feel that, as part of a plea bargain, a defendant may agree to be subjected to an unconditional sentence. I can see no reason in law, and no advantage to any side, in allowing such bargains.

*Young Hee Choy, supra,* the other case relied on in the majority opinion, deserves brief discussion. In *Young Hee Choy,* the defendant raised a constitutional challenge similar to appellants' here. The court did *not* find waiver, but reached the constitutional issue on the merits, rejecting it on the basis of *Cunningham v. United States,* 256 F.2d 467 (5th Cir. 1968), and *Carter v. United States,* 113 U.S.App.D.C. 123, 306 F.2d 283 (1962). *See,* 322 F.2d at 66 and n. 7.

Even if the majority were right to extend *Tollett* to constitutional challenges arising from punishment, there would be an additional reason in this case not to find waiver. A waiver of constitutional rights must be knowingly and intelligently made. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). When it comes as a result of a guilty plea it must be made "with understanding of . . . the consequences of the plea." Fed.R.Crim.P. 11. Appellants Leming and La Rue both understood that they could be sentenced to up to six years of confinement under the Youth Corrections Act.[3] But they had no way of

---

**3.** In No. 74–2528, the following discussion took place before appellant La Rue pleaded guilty:

THE COURT: Do you know the maximum sentence that the Court can impose upon you as a result of your plea of Guilty to this charge?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: What is the maximum sentence?

THE DEFENDANT: One Year.

THE COURT: It is one year or five thousand dollar fine, or both.

Also, because of your age, the Court could sentence you under the Federal Youth Corrections Act in which case you could spend up to six years under that Act even though the charge to which you are pleading Guilty is a misdemeanor which carries a maximum of one year in prison.

Now let me explain to you that it depends upon how you are sentenced.

If you are sentenced under the Federal Youth Corrections Act—and you can be, on a misdemeanor charge, sentenced under the Federal Youth Corrections Act—in which

case you could spend up to six years in their custody.

Do you understand?

THE DEFENDANT: Yes, I do, Your Honor. Reporter's Transcript, vol. II, pp. 5–6.

In No. 74–2455, the following discussion took place between the Court and appellant Leming before Leming entered her plea:

THE COURT: Do you understand what is the maximum sentence you may receive as a result of your plea to this charge which charges you with possessing eighty-nine amphetamine tablets?

DEFENDANT LEMING: One year.

THE COURT: And a fine of what amount?

DEFENDANT LEMING: Five thousand.

THE COURT: Because of your age, ma'am, you are also subject to the provisions of the Youth Corrections Act, and you could be confined for as long as six years? Do you understand that?

DEFENDANT LEMING: Yes, sir.

THE COURT: Having in mind those maximum sentences that you can receive as a result of your plea of guilty, is it your desire to waive or give up those rights which I have

knowing the crucial fact upon which they now base their challenge: That confinement under the Act is no different from prison. The assumption of the Act's draftsmen,[4] of the cases upholding the constitutionality of § 5010(b),[5] and presumably of the trial judges below[6] was that Youth Corrections Act confinement would offer special conditions and opportunities which would compensate for the risk of having to spend more time than would be required under an adult sentence to prison. The facts on which appellants now rely to refute that assumption came to light over one year after they entered guilty pleas. They cannot be said to have understood at the time of plea that they could be subject to six years *in prison.*

I cannot agree with the majority that, under *Tollett,* these appellants have waived their claim by pleading guilty. Further, I cannot agree that if a waiver took place, it was with adequate knowledge of the consequences. These appellants have standing to raise their claim and have it considered on the merits. *See Young Hee Choy, supra,* 322 F.2d at 65–66.

---

stated to you and you have stated you understand and enter a plea of guilty to this charge of possession of eighty-nine amphetamine tablets? Is it still your desire to enter such a plea?
DEFENDANT LEMING: Yes.
R.T., vol. IV, pp. 5–6.

4. *See United States v. Hayes,* 474 F.2d 965, 967 (9th Cir. 1974), *quoting* H.R.Rep.No.2979, 81st Cong., 2d Sess. 4 (1950). *See also Dorszynski v. United States,* 418 U.S. 424, 432–35 (1974).

5. *See* Part II *infra.*

6. *See* note 3 *supra.*

7. Relevant testimony of Williams was as follows:
[Direct examination by Mr. Strauss, Assistant United States Attorney]
Q. All right. Now, in designating a young person—let's take, for example, age 25—to an institution, how is that determination made as to where that person would be sent?
A. Well, first of all, we depend upon the presentence report and the FBI report and so forth for background information, and from that information we gather the prior arrest record, prior conviction record, and prior in-

## II

Although § 5010(b) calls for "treatment and supervision" in the custody of the Attorney General "in lieu of" imprisonment, the record in these two cases shows that § 5010(b) confinement and imprisonment are functional equivalents. In No. 74–2455, following Leming's sentence, the parties agreed to a hearing to supplement the record. At that hearing, the government called as a witness Mr. James Daniel Williams of the federal Bureau of Prisons. His testimony, *uncontradicted and unchallenged,* established that persons under the age of 26 who are sentenced to confinement under the Youth Corrections Act find themselves treated just like other persons of similar age who are sentenced to regular prison terms for like crimes. According to his testimony, regardless of whether or not sentence is imposed under the Youth Corrections Act, the Bureau of Prisons assigns a young offender to a specific institution, offers treatment and rehabilitation opportunities within the institution, and mixes young offenders together in the general population within the institution.[7] The

---

volvement in criminal activity of the individual. And then based with that is the educational needs and educational, vocational requirements and the counseling needs of the individual. And that, more or less, is what we determine the designations on.
Q. Now, is that process in any way different if the person has been sentenced under the Youth Act, as opposed to an adult type sentence?
A. No. We go through the same process for all designations, whether it's youth, adult, or alien or what have you?
*      *      *      *      *      *
Q. Now, in designating a young person to an institution such as Lompoc, does it make any difference whether or not he has been sentenced as an adult offender or under the Youth Act?
A. No. We try to keep all of our youth in our youth facilities regardless as to the sentence; we try to put them into a youth facility, whereas they can have the benefit of the different training, counseling, and educational programs.
Q. If you have a person sentenced under the Youth Act, does that guarantee him that he will be sent to a youth facility?
A. Yes, to begin with.

only differences to which Williams testified were these: First, if a rehabilitation program in a given institution is oversubscribed, a person sentenced under the Youth

Q. If you have a young person sentenced under an adult sentence, does he have the same guarantee?

A. Yes; he will be sent to a youth facility initially.

\* \* \* \* \* \*

[Cross-examination by Mr. Boles]

Q. You indicated that persons are originally designated to—if they are in a youth category, say, from 18 to 26, to a youth facility?

A. Correct.

Q. Now, that's whether or not they are Youth Act or adult sentences; is that correct?

A. Yes, depending, again, upon the prior record and the offense.

Q. They will either be sent to a more secure or less secure youth facility?

A. Right.

Q. But they would always be originally designated to a youth facility?

A. To a youth facility.

Q. Suppose that they didn't behave themselves or respond to programming or whatever they might do. Could they then be transferred to other types of facilities?

A. Yes. I indicated that if an individual is committed originally to the youth facility and violates the rules and so forth and becomes a management problem, then he can be transferred to a more secure youth reformatory or an FCI, and, as the ultimate, he would be transferred to a penitentiary.

Q. This would be the same for somebody sentenced under the Youth Act or as an adult?

A. Correct.

\* \* \* \* \* \*

Q. I believe Mr. Strauss asked you this, but it was my understanding that—I just want to make sure I understand what you said—that a Youth Act person would be designated—whether he was sentenced as an adult or Youth Act, if they are in the age category, they would be guaranteed original designation to some type of youth facility?

A. Also dependent upon their prior record, yes.

Q. Right. And when you say a youth facility that means a place designated between this age group?

A. Right.

R.T. in No. 74–2455, vol. III, pp. 8, 12, 17–18, 20.

On treatment of offenders within federal institutions, the testimony was:

[Direct examination by Mr. Strauss]

Q. Once at the youth facility, is there any distinction between the treatment given to a young person sentenced under an adult sentence and a person of the same age sentenced under the Youth Act?

A. No. The same classification and testing process is granted to all commitments to a youth facility or an adult.

Q. Taking two people of equal age—let's say, for example, 22 years old, one sentenced under a Youth Act sentence and one under an adult sentence for a similar crime with a similar background, what, if any, difference in treatment will one receive because he has a Youth Act sentence as opposed to the other under an adult sentence?

A. None whatsoever. It all depends upon the individual, but both are offered the same opportunities.

\* \* \* \* \* \*

Q. So it is fair to say, then, that the programs that exist in an institution like Lompoc are required by law for Youth Act prisoners and that adult prisoners of the same age are being given the opportunity to participate in the youth programs——

A. Correct.

Q. ——by the Bureau of Prisons——

A. Right.

Q. ——although the Bureau of Prisons is not necessarily required to do that?

A. By law, no, but the programs are available. If I may, we also offer a lot of the same programs and other type counseling in all of our facilities, both penitentiaries, youth, FCI's, and camps.

\* \* \* \* \* \*

[Cross-examination by Mr. Boles]

Q. Now, once in the institution, whichever institution a person is designated to, are all the inmates in that institution offered the same program of services in that institution?

A. Yeah. What happens when an inmate is committed to one of our facilities, he's first of all assigned a case manager, and then he's given a battery of tests by the education department, the mental health department, he's interviewed by different areas, and then he's brought in to a classification committee, and the inmate and his classification team try to set up a program that all agree upon that is beneficial to him.

And if a program is full at one time, then he is put on the waiting list; and if you have two individuals—as someone used the example earlier, if you have two individuals with the identical same needs, then the youth, because of the law, would be put into a program before the adult of the same age. The youth would get priority in going into the program.

Q. You mean it would be a priority to someone sentenced under the Youth Act rather than an adult sentence?

A. Correct.

Q. But basically, though, in the institution, if the room is available, they are offered

Corrections Act has first chance at any openings;[8] and second, a person sentenced under the Youth Corrections Act who turned out to be a troublemaker might go through a longer process of reassignment than a troublemaker under adult sentence before eventually being assigned to a penitentiary.[9] Neither difference has been shown to apply in either case at bar.

Sentences of confinement under § 5010(b), imposed on misdemeanor offenders, have been repeatedly challenged on due process and equal protection grounds, based on the fact that the maximum term under the Youth Corrections Act is longer than the one year maximum provided for adults who commit misdemeanors. The courts have consistently rejected the argument. The leading cases are *Cunningham v. United States, supra,* and *Carter v. United States, supra. Cunningham* and *Carter* have been followed in this Circuit [10] and in others.[11] However, the central premise of every case upholding longer sentences under the Youth Corrections Act against due process and equal protection claims has been that "confinement [under 18 U.S.C. § 5010(b)] *cannot be equated* with incarceration in an ordinary prison." *Carter, supra,* at 285 (emphasis added). In *Cunningham,* the court based its holding on its observation that the Youth Corrections Act

provides for and affords youthful offenders, in the discretion of the judge, *not*

*heavier penalties and punishment than are imposed upon adult offenders,* but the opportunity to escape from the physical and psychological shocks and traumas attendant upon serving an ordinary penal sentence while obtaining the benefits of corrective treatment, looking to rehabilitation and social redemption and restoration. 256 F.2d at 472 (emphasis added).

The leading cases in this Circuit rely directly on *Carter* and *Cunningham. See, e. g., Eller v. United States,* 327 F.2d 639 (9th Cir. 1964). Each of them depends on the constitutional reasoning expressed most simply in *Carter:*

[T]he basic theory of [the Youth Corrections] Act is rehabilitative and in a sense this rehabilitation may be regarded as comprising the *quid pro quo* for a longer confinement but under different conditions and terms than a defendant would undergo in an ordinary prison. 306 F.2d at 285.

The evidence in the cases before us shows, inescapably, that the premise of *Carter* and *Cunningham,* relied on in *Eller, supra, Young Hee Choy v. United States, supra,* and *Standley v. United States,* 318 F.2d 700 (9th Cir. 1963), is untenable. Confinement under the Youth Corrections Act today may be as rehabilitative in an absolute sense as the draftsmen intended, but the testimony of Mr. Williams makes it

---

exactly the same treatment, whether they are Youth Act or adult?
  A. Correct; right.
  R.T. in No. 74–2455, vol. III, pp. 12–13, 15–16, 21–22.
On separation, the testimony was:
  [Cross-examination by Mr. Boles]
  Q. In an institution, for example, like Lompoc, is there separation between people who are sentenced under a Youth Act and those sentenced under an adult sentence in the youth category, or are they commingled together?
  A. No. We make no separation of inmates in the same facility. They have the same programs, eating, recreation, and so forth.
  Q. I take it there are no, then, separations between one type of Youth Act and the other type of Youth Act?
  A. No, there are no separations at all.
  R.T. in No. 74–2455, vol. III, p. 22.

**8.** R.T. in No. 74–2455, vol. III, pp. 21–22. The relevant passage is quoted in full in n. 4 *supra.*

**9.** R.T. in No. 74–2455, vol. III, pp. 13–14.

**10.** *See United States v. Rehfield,* 416 F.2d 273 (9th Cir. 1969), *cert. denied,* 397 U.S. 996, 90 S.Ct. 1137, 25 L.Ed.2d 405; *Eller v. United States,* 327 F.2d 639 (9th Cir. 1964); *Young Hee Choy v. United States,* 322 F.2d 64 (9th Cir. 1963); and *Standley v. United States,* 318 F.2d 700 (9th Cir. 1963).

**11.** *See, e. g., Caldwell v. United States,* 435 F.2d 1079 (10th Cir. 1970); *Guidry v. United States,* 433 F.2d 968 (5th Cir. 1970); *Foston v. United States,* 389 F.2d 86 (8th Cir. 1968); and *Johnson v. United States,* 374 F.2d 966 (4th Cir. 1967).

clear that such confinement *is not different from* ordinary prison incarceration, in its general conditions, nor in rehabilitative and corrective opportunities, nor in share of physical and psychological shocks and traumas. There is, therefore, no *quid pro quo* for the potentially longer confinement for these two misdemeanor offenders under the Youth Corrections Act. The only significant difference between a sentence under § 5010(b) and one of ordinary imprisonment under 21 U.S.C. § 844(a), according to Mr. Williams' testimony, is the label. We have been alerted to the dangers of accepting uncritically the labels which government attaches to the forced confinement of citizens, particularly young ones. *In re Gault,* 387 U.S. 1, 27–28, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Under the current policies of the Bureau of Prisons as described by Mr. Williams, to sentence Leming and La Rue to confinement under 18 U.S.C. § 5010(b) is to sentence them to prison. To the extent their sentences may exceed one year of confinement, those sentences exceed the statutory maximum established in 21 U.S.C. § 844(a), and therefore deprive appellants of due process of law.[12]

Finding no waiver, I would reach the merits and conclude that, under the current policies of the Bureau of Prisons, appellants' sentences violate the Due Process Clause of the Fifth Amendment to the extent that they may exceed one year in confinement.

---

**12.** *Cf. In re Wilson,* 438 Pa. 425, 264 A.2d 614, 617 (1970). *See also* Note, *The FYCA: Past Concern in Need of Legislative Reappraisal,* 11 Am.Crim.L.Rev. 229, 257–58 (1972).